NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAWN DOCTOR, Inc., a New Jersey Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH RIZZO and ANNAMARIA RIZZO<br><br>Defendants. | Civil Action No. 12-1430 (PGS)<br><br><br>**MEMORANDUM & ORDER** |

**SHERIDAN, U.S.D.J.**

  This matter comes before the Court upon plaintiff's, Lawn Doctor, Inc. ("LD"), Order To Show Cause seeking a preliminary injunction against defendants, Joseph Rizzo and Annamaria Rizzo ("Defendants"). This matter arises out a Franchise Agreement entered into on May 14, 2002 between LD and the Defendants. The Franchise Agreement granted Defendants the right to own and operate a Lawn Doctor lawn care business within a defined geographic area in Florida for a 20 year term. LD alleges that as a result of the Defendants' breach of the Franchise Agreement, the Agreement was terminated and the Defendants have failed to comply with their contractual post-termination obligations. Defendants argue that LD may have breached the Franchise Agreement because of misrepresentations made prior to entering into the Agreement. Mr. Rizzo alleges that LD's equipment "required constant maintenance and cleaning as a result of the constant clogging." Joseph Rizzo Decl. ¶ 12. "The poor performance of the system made it difficult to retain customers

and attract new customers." *Id.* "The equipment was also completely inadequate for its intended purpose." *Id.* at ¶ 13. As a result of the equipment issues, the product cost for fertilizer and insecticide was more than twice the cost represented to the Defendants by LD employees. *Id.* at ¶ 15. LD is now seeking to enjoin Defendants from using LD's federally protected trade names and trademarks, returning LD's confidential information, and refraining from operating a competing lawn care business as defined by the restrictive covenant in the Franchise Agreement. The parties have consented to the following restraints as enumerated in LD's OTSC.

>   (a) Preliminarily enjoining and restraining Defendants . . . from marketing, promoting, or offered lawn care services using the Lawn Doctor trademarks including . . . the use of any and all print or telecommunications, logos, advertisements, . . . that refer or relate in any manner to the Lawn Doctor trademarks or to names and marks confusingly similar to the Lawn Doctor trademarks;
>
>   (b) Compelling Defendants to provide LD with access to and turn over all originals and copies of client files and information including client names, addresses, telephone numbers and social security number on their computers from their former franchise territory;
>
>   ( c ) Compelling Defendants to turn over to LD the originals and all copies of trade secret, confidential, and proprietary information . . . between the parties . . .;
>
>   (d) Compelling Defendants to fully de-identify their location within the territory from their appearance as Lawn Doctor franchise locations and, specifically, requiring Defendants to discontinue the use of the Lawn Doctor trademarks, including any trade dress and signs . . . ;
>
>   (e) Compelling Defendants to notify the telephone company and all listing agencies and advertising directories where their telephone numbers are listed, that Defendants no longer have the right to use any telephone numbers, listing, or advertisements using the Lawn Doctor Mark;

However, the parties are in dispute over subsection (f) of the OTSC requiring enforcement of the restrictive covenant.  Subsection (f) states:

> (f) Preliminary enjoining and restraining Defendants and its owner(s) or the members of their immediate families from having any interest as a disclosed or beneficial owner, investor, lender, partner, director, officer, manager, consultant, employee, representative or agent, or in any other capacity, in any Competitive Business located within (I) Defendant's franchise territory, as described on Exhibit "A" attached hereto and the map attached as Exhibit "B" (the "Franchise Territory"); (ii) fifty (50) miles of the Franchise Territory's boundaries; (iii) any territory granted by LD to any other LD franchisee; or (iv) fifty (50) miles of the boundaries of any territory granted by LD to any other LD franchisee.

The standard for a preliminary injunction requires the moving party to establish the following four elements: 1) a likelihood of success on the merits; 2) denying the injunction will result in irreparable harm; 3) granting the injunction will not result in greater harm to the non-moving party; and 4) the injunction is in the public interest.  *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,* 290 F.3d 578, 596 (3d Cir. 2002).  Courts have noted that a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §2948, at 129-130 (2d ed. 1995)). Additionally, the Supreme Court has held that "[a] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008).  Furthermore, a preliminary injunction may not be granted where there are disputed issues of fact. *Gruntal & Co. v. Steinberg*, 843 F. Supp. 1, 15 (D.N.J. 1994).

The primary issue is whether LD has established a likelihood of success on the merits as to whether the restrictive covenant is valid and enforceable.  Under New Jersey law,[1] a restrictive covenant is valid and enforceable if its satisfies a three prong test for reasonableness as established in *Solar Indus., Inc. v. Malady,* 55 N.J. 571 (1970).  The Court held that the restrictive covenant "will generally be found to be reasonable where it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public." *Id.* at 576.  Even if the covenant is found to be enforceable, it may be limited in duration, geographic limits, and scope of activities prohibited to ensure that it is reasonably tailored to protect the employer's legitimate interests.  *Community Hosp. Group, Inc. V. More*, 183 N.J. 36, 58-59 (2005); *Raven v. A. Klein & Co., Inc.,* 195 N.J. Super. 209, 213 (App. Div. 1984).  LD argues that courts have freely enforced restrictive covenants in the context of a franchise relationship, because of its similarity to non-compete covenants ancillary to the sale of a business versus non-compete covenants ancillary to an employment contract. *Jackson Hewitt, Inc. v. Childress*, No. 06-0909, 2008 WL 834386, (D.N.J. Mar. 27, 2008); *Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.*, 834 F. Supp. 683 (D.N.J. 1993).  Defendants argue that enforcement of the restrictive covenant would impose an undue hardship because the geographic limitation prevents Mr. Rizzo from operating a lawn care business anywhere within the state of Florida or any of the other 37 states where LD operates.  In fact, at the hearing, LD's counsel argued that if Defendants started a lawn care business in Georgia, LD would seek an injunction there to enforce the restrictive covenant.

---

[1] As a federal court sitting in diversity, the substantive law of New Jersey will apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Erie RR Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Additionally, no one has argued that Florida law should apply.

The restrictive covenant in the Franchise Agreement is provided in section 14: Rights and Obligations of the Company and Franchisee Upon Termination or Expiration of Franchise, subsection D: Covenant Not To Compete, which states in relevant part,

> FRANCHISEE and its owner(s) agree that for a period of eighteen (18) months, commencing on the effective date of termination or expiration, or the date on which FRANCHISEE ceases to conduct the business conducted pursuant to this Agreement, whichever is latter, neither FRANCHISEE, its owner(s) nor the members of his and their immediate families will have any interest as a disclosed or beneficial owner, investor, lender, partner, director, officer, manager, consultant, employee, representative or agent, or in any other capacity, in any Competitive Business located within (I) FRANCHISEE's Area of Primary Responsibility, (ii) fifty (50) miles of the boundary of FRANCHISEE'S Area of Primary Responsibility, (iii) the area of primary responsibility of any other LAWN DOCTOR Business, or (iv) fifty (50) miles of the boundary of the area of primary responsibility of any other LAWN DOCTOR Business.

LD has a legitimate interest in protecting its trade secrets, confidential information, customer relationships, and its good will. *See Whitmyer Bros., Inc. v. Doyle*, 58 N.J. 25, 33 (1971); *Jiffy Lube*, 834 F. Supp. at 691. However, the covenant not to compete is so broad and all encompassing that it is unreasonable in geographic scope. Defendants operated a LD franchise in a relatively small area in Bradenton-Sarasota, Florida. Considering LD seeks to impose a restrictive covenant in at least 38 states, this covenant is not in reasonable proportion to LD's legitimate interests in protecting customer relationships and good will. As such, the Court will not enforce the covenant as written, nor will it revise the scope of the covenant because there was no testimony or affidavit which explained how a more limited covenant could reasonably protect LD's legitimate interests. Moreover, the defendants have agreed to five types of injunctive relief (as noted above), which may be sufficient to protect LD's legitimate interests without enforcement of the restrictive covenant.

In light of the unreasonable scope of the restrictive covenant, and the dispute in facts as to the restrictive covenant, enforcement of the restrictive covenant is denied.

## ORDER

**IT IS** on this 25th day of June, 2012

**ORDERED** that a preliminary injunction against Defendants, as agreed upon by the parties, is GRANTED as follows

(a) Preliminarily enjoining and restraining Defendants, their employees, agents, independent contractors, and all those who act in concert or participation with them from marketing, promoting, or offered lawn care services using the Lawn Doctor trademarks including, without limitation, the use of any and all print or telecommunications, logos, advertisements, drafts, labels, signs, flyers, stationary, envelopes, forms, business cards, booklets, brochures, catalogues, circulars, pamphlets, periodicals, bulletins, instructions, minutes, other communications, purchase orders, contracts, agreements, licenses, books of account, orders, accounts, working paper and plans that refer or relate in any manner to the Lawn Doctor trademarks or to names and marks confusingly similar to the Lawn Doctor trademarks;

(b) Compelling Defendants to provide LD with access to and turn over all originals and copies of client files and information including client names, addresses, telephone numbers and social security number on their computers from their former franchise territory;

( c ) Compelling Defendants to turn over to LD the originals and all copies of trade secret, confidential, and proprietary information as those terms are defined in the Franchise Agreement between the parties, whether contained on paper, disk or other computer storage media, for the territory at issue;

(d) Compelling Defendants to fully de-identify their location within the territory from their appearance as Lawn Doctor franchise locations and, specifically, requiring Defendants to discontinue the use of the Lawn Doctor trademarks, including any trade dress and signs and any other forms of advertising

      or indicia that any location is operated as a Lawn Doctor franchise locations;

(e) Compelling Defendants to notify the telephone company and all listing agencies and advertising directories where their telephone numbers are listed, that Defendants no longer have the right to use any telephone numbers, listing, or advertisements using the Lawn Doctor Mark; compelling Defendants to execute appropriate documents authorizing the transfer of all such telephone numbers, listings and advertisements to LD or its designee; and compelling Defendants to deliver to LD a copy of such documents for transfer; and it is further

  **ORDERED** that Plaintiff's application to enjoin Defendants to comply with the restrictive covenant in the Franchise Agreement is denied.

               *s/Peter G. Sheridan*
               PETER G. SHERIDAN, U.S.D.J.

June 25, 2012