NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LAWN DOCTOR, INC.,** | Civil Action No. 12-1430 (TJB) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **JOSEPH RIZZO, et al.,** | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Plaintiff Lawn Doctor, Inc.'s ("Lawn Doctor" or

"LD") motion for a declaratory judgment and to enforce the parties' settlement agreement

[Docket Entry No. 30].  Defendants Joseph Rizzo and AnnaMaria Rizzo (collectively, the

"Rizzos" or "Defendants") oppose Lawn Doctor's motion.  The Court heard argument on Lawn

Doctor's motion on October 18, 2012.  The Court has fully reviewed all arguments made and

evidence submitted in support of and in opposition to Lawn Doctor's motion.  For the reasons set

forth more fully below, Lawn Doctor's motion for a declaratory judgment and to enforce the

parties' settlement agreement is GRANTED.

## I.       Background and Procedural History

On May 14, 2002, the Rizzos entered into a franchise agreement (the "Franchise

Agreement") with Lawn Doctor.  Pursuant to the terms of the Franchise Agreement, the Rizzos

were granted the exclusive right, subject to certain terms and conditions, to operate a lawn care

business, providing Lawn Doctor Services and using Lawn Doctor's registered trade names and

trademarks as well as its proprietary business methods, operating procedures and specialized

equipment, within a specifically defined geographic area of Florida for a term of 20 years.

Approximately 9½ years into the Franchise Agreement, Lawn Doctor sent a Notice of Default

and Demand for Payment (the "November 17, 2011 Default Notice") to the Rizzos advising them

that they had failed to submit various reports and fees required to be submitted pursuant to the

terms of the Franchise Agreement and directing the Rizzos to cure the identified deficiencies

within 30 days.  The Rizzos failed to cure the violations addressed in the November 17, 2011

Default Notice.  As a result, by letter dated January 24, 2012, Lawn Doctor sent the Rizzos a

Notice of Termination ("Termination Notice"), formally terminating the Franchise Agreement.

The Termination Notice also demanded that the Rizzos comply with several post-termination

obligations.

One such post termination obligation involved the Rizzos' obligation not to compete with

Lawn Doctor.  Pursuant to Section 14D of the Franchise Agreement, for a period of 18 months

after the effective date of termination:

> [N]either FRANCHISEE, its owner(s) nor the members of his and
> their immediate families will have any interest as a disclosed or
> beneficial owner, investor, lender, partner, director, officer,
> manager, consultant, employee, representative or agent, or in any
> other capacity, in any Competitive Business located within (i)
> FRANCHISEE's Area of Primary Responsibility, (ii) fifty (50)
> miles of the boundary of FRANCHISEE's Area of Primary
> Responsibility, (iii) the area of primary responsibility of any other
> LAWN DOCTOR Business, or (iv) fifty (50) miles of the boundary
> of the area of primary responsibility of any other LAWN DOCTOR
> Business.

(Schmierer Cert., Ex. B at 24; Docket Entry No. 30-2).  The term "Competitive Business" is

defined in Section 4B of the Franchise Agreement to be, "[a]ny business which operates, or

grants franchises or licenses to others to operate, a business for the establishment, care and

conditioning of lawns or other vegetation or any related or ancillary services, including, but not limited to, trees, shrubbery and other plant life." (Schmierer Cert., Ex. B at 8).

On March 7, 2012, Lawn Doctor initiated this lawsuit against the Rizzos seeking monetary and injunctive relief based on their failure to abide by their post termination obligations. Lawn Doctor also sought the entry of an Order to Show Cause ("OTSC"), which would require the Rizzos to show cause why a preliminary injunction should not be entered against them. On March 16, 2012, the District Court entered Lawn Doctor's OTSC. Part of the preliminary relief contemplated in Lawn Doctor's OTSC included requiring the Rizzos to abide by the terms of the restrictive covenant outlined in Section 14D of the Franchise Agreement.

The District Court held a hearing on Lawn Doctor's OTSC on June 20, 2012. On June 27, 2012, the District Court entered a Memorandum and Order granting in part and denying in part Lawn Doctor's request for a preliminary injunction. The parties consented to all of the restraints listed in Lawn Doctor's OTSC except for the enforcement of the restrictive covenant. As a result, the District Court granted Lawn Doctor's requests for those restraints.

With respect to the restrictive covenant, the District Court determined that while Lawn Doctor had "a legitimate interest in protecting its trade secrets, confidential information, customer relationships, and its good will[,] . . . the covenant not to compete [wa]s so broad and all encompassing that it [wa]s unreasonable in geographic scope." (Memorandum and Order of 6/27/12 at 5; Docket Entry No. 23). Consequently, the District Court denied Lawn Doctor's request to enforce the restrictive covenant as written. The District Court additionally declined to "revise the scope of the covenant because there was no testimony or affidavit which explained how a more limited covenant could reasonably protect LD's legitimate interests." (*Id.*)

3

Nevertheless, as discussed during the June 20, 2012 hearing on Lawn Doctor's OTSC, the District Court left open the possibility of conducting an evidentiary hearing on the enforceability of a less restrictive covenant not to compete.

On July 6, 2012, Lawn Doctor wrote to the District Court regarding the possibility of arranging the aforementioned evidentiary hearing. The District Court set said hearing for September 27, 2012. However, prior to the September 27, 2012 evidentiary hearing, the parties reached an agreement on the appropriate scope of the restrictive covenant. Specifically the parties agreed to remove subpart (iv) from the restrictive covenant, which prohibited the operation of a Competitive Business within "fifty (50) miles of the boundary of the area of primary responsibility of any other LAWN DOCTOR Business[,]" and keep the first three subparts as contained in Section 14D of the Franchise Agreement. As a result, the parties requested that the District Court's June 27, 2012 Memorandum and Order be vacated and that the Court enter a Consent Injunction, memorializing the first five restraints originally proposed in Lawn Doctor's OTSC (*i.e.* restraints (a)-(e)) as well as the modified restrictive covenant; the restraints would last for 18 months from the date of the entry of the Court's order. The parties' Consent Injunction also included a provision indicating that the Court would retain jurisdiction over the enforcement of its terms, including any supplementary proceedings brought to enforce same.

However, the parties also requested that prior to the entry of the Consent Injunction, they be provided the opportunity to submit briefing and present oral argument on an issue related to the interpretation of the language of the modified restrictive covenant contained in the Consent Injunction. Specifically, they sought the opportunity to brief the issue of whether the "irrigation

4

services" currently provided by the Rizzos in Florida would fall within the definition of Competitive Business as that term is used in the modified restrictive covenant.  In order to conserve judicial resources, the parties suggested that this briefing take place before the Consent Injunction was entered so that the Consent Injunction ultimately entered by the Court would include a revised definition of Competitive Business that would either specifically include or exclude "irrigation services"depending on the Court's ruling.  (*See* Letter from Ross H. Schmierer, Esq. to the Hon. Tonianne J. Bongiovanni of 9/19/2012 at 1-2; Docket Entry No. 27). The parties further consented to the undersigned conducting the remaining proceedings in this case, including determining Lawn Doctor's pending motion for a declaratory judgment and to enforce the parties' settlement agreement.  (Consent to Jurisdiction by U.S. Magistrate Judge; Docket Entry No. 29).  As such, this Court set a briefing schedule and hearing date for said motion.

## II.    Argument

Through its motion, Lawn Doctor asks the Court to enforce the parties' settlement agreement and issue a declaratory judgment that "irrigation services" fall within the definition of Competitive Business under the terms of the parties' settlement agreement.  As an initial matter, Lawn Doctor argues that the parties entered into a binding settlement agreement that should be enforced.  Lawn Doctor argues that the Rizzos, through counsel, negotiated the terms of the settlement agreement, which involved entry of the above-described Consent Injunction.  Lawn Doctor further argues that the parties agreed upon all of the material terms of the settlement agreement and Consent Injunction.  As a result, Lawn Doctor argues that the settlement agreement should be enforced.

In addition, Lawn Doctor argues that it is entitled to a declaratory judgment that the Rizzos are violating the parties' settlement agreement.  As noted above, Lawn Doctor contends that the parties entered into an enforceable settlement agreement.  Lawn Doctor further contends that the Rizzos are currently providing "irrigation services" to customers in violation of the terms of the parties' settlement agreement.  As a result, Lawn Doctor maintains that "an actual controversy" exists between the parties and that a "declaration regarding 'the rights and other legal relations' of the parties" is appropriate under the Declaratory Judgment Act."  (Lawn Doctor Br. at 5 (quoting Declaratory Judgment Act, 28 U.S.C. § 2201)).

With respect to the actual controversy between the parties, Lawn Doctor argues that the restrictive covenant contained within the settlement agreement, including the definition of "Competitive Business," is clear and unambiguous and that the irrigation services business being operated by the Rizzos in their former franchised territory falls within the scope of same.  In this regard, Lawn Doctor argues that the parties' binding settlement agreement contains a restrictive covenant that prohibits the Rizzos from operating a Competitive Business, defined as "[a]ny business which operates, or grants franchises or licenses to others to operate, a business for the establishment, care and conditioning of lawns or other vegetation or any related or ancillary services, including, but not limited to, trees, shrubbery and other plant life."  (Schmierer Cert., Ex. B at 8).  Lawn Doctor claims that under New Jersey law contract terms must be given their plain and ordinary meaning; there is no room for interpretation.  Lawn Doctor further argues that the irrigation of lawns clearly falls withing the ordinary meaning of caring for lawns and conditioning lawns.

6

Moreover, Lawn Doctor argues that not including irrigation services within the definition of Competitive Business would render several terms in that definition, such as "care," "conditioning," and "related or ancillary services," meaningless.  Lawn Doctor claims that such a result would be contrary to the basic principles of contract interpretation.  In light of the fact that the terms of the parties' settlement agreement, including the modified restrictive covenant and the definition of "Competitive Business" are clear and unambiguous, Lawn Doctor argues it should be enforced as written.  As such, Lawn Doctor argues that a declaratory judgment that the Rizzos' irrigation services business violates the settlement agreement should be entered and the Court should enforce the parties' settlement agreement and prohibit the Rizzos from operating such a business for 18 months.

In addition, while Lawn Doctor maintains that "the Settlement Agreement is reasonably capable of only one construction," it also argues that "extrinsic proof and circumstances prove that irrigation services falls under the definition of Competitive Business." (*Id*. at 9).  For example, Lawn Doctor relies on a Fact Sheet written in conjunction with the Environmental Horticulture department, Institute of Food and Agricultural Sciences, University of Florida, entitled "Homeowner Best Management Practices for the Home Lawn" and a memorandum authored by Clint Waltz and Gil Landry, alleged extension turfgrass specialists, entitled "A Turfgrass Management Calendar for Georgia" to show that irrigation is a necessary component of lawn care and conditioning in areas in the southeast United States like Florida. (*See* Frith Cert., Ex. A & B).  Lawn Doctor also relies on the fact that other lawn care franchise companies that compete with it provide irrigations services as part of their lawn care operations. (*See* Lawn Doctor Reply Br. at 6; Schmierer Reply Cert. Ex. B & C).

Further, Lawn Doctor points to the fact that it has developed promotional materials for irrigation services to show that those types of services fall within the scope of the restrictive covenant.  In this regard, Lawn Doctor relies on the Certification of Scott Frith, Lawn Doctor's Chairman and CEO, to establish that while it "has not rolled out irrigation services on a national basis, Lawn Doctor has developed training material, marketing programs, sales processes, and vendor relationships with the expectation that irrigation services will be offered to a greater extent." (Frith Cert. ¶10; Docket Entry No.30-7).  To support this claim, Lawn Doctor attaches "promotional materials for irrigation services" that it has developed.  (*Id*.)  The promotional materials attached consist of a single, one-page document concerning lawn sprinklers, copyrighted by Lawn Doctor in 1999.  (*Id*., Ex. C).  At argument, Lawn Doctor also pointed to a "binder" of information related to "the amount of monies and expenditures that Lawn Doctor has spent on researching irrigation to include as a bigger part of its franchise business."  (10/18/2012 Tr. at 6:20-23; Docket Entry No. 34).  Lawn Doctor, however, acknowledged that this binder of information was not included in its motion papers because it is privileged and confidential.  (*Id*. at 6:19).

Finally, Lawn Doctor relies on the fact that other Lawn Doctor franchisees provide irrigation services under the Lawn Doctor brand and pay royalties to Lawn Doctor based on the revenue generated through the irrigation services part of their businesses to establish that irrigation services are covered by the restrictive covenant.  Specifically, Lawn Doctor points to two franchisees currently providing irrigation services, one located in New Jersey and the second in Colorado.

8

The Rizzos disagree with Lawn Doctor's assessment of the restrictive covenant. Specifically, the Rizzos argue that irrigation work is not a competitive business. In reaching this conclusion, the Rizzos focus on the fact that for the 10 years they operated a Lawn Doctor franchise, they never performed irrigations services, knew of any other franchisee in Florida performing irrigations services or were provided with marketing materials, training or equipment for irrigation services. The Rizzos also point to the fact that no where in their 35 page Franchise Agreement with Lawn Doctor is the word irrigation mentioned, nor are irrigations services discussed on the Lawn Doctor website. In addition, the Rizzos note that the only evidence proffered by Lawn Doctor that its franchisees are currently providing irrigations services are Mr. Frith's assertion that two franchisees located over 1500 miles (one in New Jersey and one in Colorado) from the Rizzos' old territory perform these services and a sole invoice from the Colorado franchisee "alleging to be for irrigation work performed in Colorado." (Rizzos Opp. Br. at 5, n.1). In light of the fact that Lawn Doctor has hundreds of franchises in approximately 38 states, the Rizzos contend that "if irrigation were a central part of Lawn Doctor's business requiring the protection from competition, the company's CEO would be able to identify more than two franchises within 1,500 miles of the Rizzos' territory that allegedly perform irrigation work." (*Id.*)

Further, the Rizzos argue that "[w]hile it could conceivably be argued under the broadest interpretation that irrigation is related to the care and conditioning of a lawn," giving the broadest definition to each term of the restrictive covenant, as Lawn Doctor suggests, would be folly. Indeed, the Rizzos claim that the overreaching interpretation promoted by Lawn Doctor could

theoretically result in the Rizzos being prohibited from working in a pizzeria lest they become involved with the care and conditioning of tomatoes, an example of "other vegetation," or in a coffee shop given that they would be required to work with coffee beans and tea leaves, a potentially "related or ancillary service" involving other "plant life." (*Id*. at 4). The Rizzos note that even Lawn Doctor does not believe that the restrictive covenant extends that far and argue that it likewise does not include irrigation services.

The Rizzos argue that while New Jersey courts recognize an employer's interest in protecting trade secrets, confidential information and customer relations, they "'will not enforce a restrictive agreement merely to aid the employer in extinguishing competition albeit competition from a former [franchisee].'" (*Id*. at 6 (quoting *Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609, 635 (1988)). Moreover, the Rizzos contend that New Jersey courts narrowly construe an employer's need for protection. Here, the Rizzos claim that Lawn Doctor does not have a protectable interest in stopping the Rizzos from operating an irrigation services business. The Rizzos claim that they are "not using any knowledge, information, expertise, equipment or techniques gleaned from Lawn Doctor; [are] not in any way directly competing with any Lawn Doctor service offered within 1,500 miles of the territory within which [they are] operating; and there is no risk for confusion amongst consumers or the taking of customers." (*Id*. at 7). They claim that the fact that Lawn Doctor may some day in the future offer irrigation services is insufficient to prohibit the Rizzos from offering those services now. Indeed, the Rizzos argue that the sole purpose of Lawn Doctor attempting to broaden the restrictive covenant to include irrigations services is to "stifle competition" and "inflict vengeance on a former franchisee." (*Id*.) The Rizzos maintain that this is inappropriate. Consequently, they request that the Court

10

find that irrigation services do not fall within the scope of the definition of Competitive Business included in the restrictive covenant.

In addition, the Rizzos claim that the parties did not contemplate irrigation work at the time the settlement was entered.  They claim that at no time prior to their agreement as to the terms of the settlement did the parties ever discuss irrigation work.  Instead, they argue that it was only after the parties agreed to the terms of the restrictive covenant that Lawn Doctor informed the Rizzos that they could not perform irrigation services in the covered geographic territory.  Consequently, the Rizzos claim that "irrigation work was never contemplated as a restricted activity or 'competitive business'" and "[t]o suggest otherwise would indicate that there was no 'meeting of the minds' as to the terms of the settlement[.]" (*Id.*)  As a result, the Rizzos argue that Lawn Doctor's motion must be denied.

## III.    Analysis

### A.    Enforcement of the Settlement Agreement

A settlement agreement is a type of contract.  *See Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006) (citing *Borough of Haledon v. Borough of N. Haledon*, 358 N.J. Super. 289, 305 (App. Div. 2003)).  Consequently, courts look to state contract law when determining whether an enforceable settlement agreement has been reached.  *See Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 206 N.J. Super. 523, 527-28 (App. Div. 1985); *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F.Supp. 342, 348-49 (D.N.J. 1996) (holding that "sate law governs the construction and enforcement of settlement agreements in federal court.")

Under New Jersey state law,[1] "[a]n agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into[,] and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (internal quotations omitted). Further, in New Jersey, there is a strong public policy favoring settlements. *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990). Consequently, courts "strain to give effect to the terms of a settlement wherever possible." *Dep't of Pub. Advocate*, 206 N.J. Super. at 528. Nevertheless, courts should not enforce "[a] settlement . . . 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms.'" *Bistricer v. Bistricer*, 231 N.J. Super. 143, 147 (Ch. Div. 1987) (quoting *Kupper v. Barger*, 33 N.J. Super. 491, 494 (App. Div. 1955)). However, the mere fact that a settlement agreement fails to "contain every possible contractual provision to cover every contingency" does not render it any less enforceable. *Id.* Indeed, "a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect. So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Id.*

Further, under New Jersey law, as long as "the parties orally agree on the essential terms," a contract is formed. *McDonnell v. Engine Distributors*, Civil Action No. 03-1999, 2007 WL 2814628, *3 (D.N.J. Sept. 24, 2007). This is true "'even though [the parties] contemplate the

---

[1]While neither party explicitly addressed whether New Jersey or Florida law should apply, both relied on New Jersey law in briefing and arguing their respective positions and neither suggested that Florida law should apply to their dispute. As a result, the Court will apply the substantive law of New Jersey.

later execution of a formal document to memorialize their undertaking.'" *Id.* (quoting *United States v. Lightman,* 988 F.Supp. 448, 459 (D.N.J. 1997). "Indeed, as long as those essential terms are agreed to, 'the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges.'" *Id.* (quoting *Lahue v. Pio Costa*, 263 N.J. Super 575, 596 (App. Div. 1993)).

Under these principles, it is clear that the parties in the instant litigation reached an enforceable settlement agreement. Here, the parties agreed on the essential and material terms of their settlement. Specifically, the parties agreed that:

(a)   the Rizzos, their employees, agents, independent contractors, and all those who act in concert or participate with them would be enjoined and restrained from marketing, promoting, or offering lawn care services using the Lawn Doctor trademarks including, without limitation, the use of any and all print or telecommunications, logos, advertisements, drafts, labels, signs, flyers, stationary, envelopes, forms, business cards, booklets, brochures, catalogues, circulars, pamphlets, periodicals, bulletins, instructions, minutes, other communications, purchase orders, contracts, agreements, licenses, books of account, orders, accounts, working paper and plans that refer or relate in any manner to the Lawn Doctor trademarks or to names and marks confusingly similar to the Lawn Doctor trademarks;

(b)   the Rizzos would provide Lawn Doctor with access to and turn over all originals and copies of client files and information including client names, addresses, telephone numbers and social security numbers on their computers from their former franchise territory;

(c)   the Rizzos would turn over to Lawn Doctor the originals and all copies of trade secret, confidential, and proprietary information as those terms are defined in the Franchise Agreement between the parties, whether contained on paper, disk or other computer storage media, for the territory at issue;

(d)   the Rizzos would fully de-identify their location within the territory from their appearance as Lawn Doctor franchise locations and, specifically would be required to discontinue the use of the Lawn Doctor trademarks, including any trade dress and signs and any other forms of advertising or indicia that any location is operated as a Lawn Doctor franchise location;

(e)     the Rizzos would notify the telephone company and all listing agencies and advertising directories where their telephone numbers are listed, that the Rizzos no longer have the right to use any telephone numbers, listing, or advertisements using the Lawn Doctor Marks; and the Rizzos would execute appropriate documents authorizing the transfer of all such telephone numbers, listings and advertisements to Lawn Doctor or its designee; and the Rizzos would deliver to Lawn Doctor a copy of such documents for transfer; and

(f)     the Rizzos and their owner(s) or the members of their immediate families would be enjoined and restrained from having any interest as a disclosed or beneficial owner, investor, lender, partner director officer, manager, consultant, employee, representative or agent, or in any other capacity, in any Competitive Business located within (i) the Rizzos' Franchise Territory as defined in Exhibits A & B to Lawn Doctor's original OTSC; (ii) fifty (50) miles of the Franchise Territory's boundaries; or (iii) any territory granted by Lawn Doctor to any other Lawn Doctor franchisee.

As part of their settlement agreement, the parties additionally agreed that the restrictive covenant set forth in paragraph (f) above would last for 18 months from the date of the entry of the Consent Injunction.  Further, they agreed that the term "Competitive Business" would retain the definition set forth in Section 4B of the Franchise Agreement.  Specifically, the parties agreed that the term "Competitive Business" means "[a]ny business which operates, or grants franchises or licenses to others to operate, a business for the establishment, care and conditioning of lawns or other vegetation or any related or ancillary services, including, but not limited to, trees, shrubbery and other plant life."  (Schmierer Cert., Ex. B at 8).

While the parties did not discuss whether irrigation services fall within the scope of the definition of "Competitive Business," and thus whether such services would be prohibited under the restrictive covenant, their failure to do so in no way changes the fact that the parties entered into a binding and enforceable settlement.  Despite the Rizzos claims to the contrary, the parties' failure to address whether irrigation services would be a prohibited activity under the restrictive

14

covenant does not establish that there was no meeting of the minds between Lawn Doctor and the Rizzos.  As noted above, the fact that their settlement agreement fails to "contain every possible contractual provision to cover every contingency" does not render it less enforceable.  *Bistricer*, 231 N.J. Super. at 147.  The fact that Lawn Doctor and the Rizzos did not contemplate every possible activity that could be viewed as a "Competitive Business" and negotiate whether that activity would be prohibited, does not indicate a lack of mutual assent or result in their agreement being rendered unenforceable.  Here, the parties agreed to the material and essential terms of their settlement and the Court shall not permit any "gaps left by the parties . . . [to] frustrate their intention to be bound."  *Id*.  Instead, regardless of whether irrigation services are determined to fall within the definition of "Competitive Business," and hence the scope of the restrictive covenant, the Court finds that the parties entered into an enforceable settlement agreement.

**B.      The Declaratory Judgment Act**

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, "in a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  Here the Court finds that an actual, justiciable controversy exists between Lawn Doctor and the Rizzos.  Specifically, there is "a real and substantial controversy" regarding whether the Rizzos are violating the terms of the parties' settlement agreement by operating an irrigation services business in Florida. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 618 (1937).  As such, the Court shall exercise its discretion

15

to "declare the rights and other legal relations" of Lawn Doctor and the Rizzos on this issue under the Declaratory Judgment Act.

### C.    The Parties' Restrictive Covenant

The question facing the Court is whether irrigation services represent a "Competitive Business" as that term is used in the restrictive covenant agreed to by the parties.  In making this determination, the Court first must decide whether the parties' contract is clear or ambiguous. This preliminary issue is a question of law for the Court.  *Jackson Hewitt Inc. v. Childress*, Civil Action No. 06-CV-0909 (DMC), 2008 WL 834386, *6 (D.N.J. March 27, 2008); *Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F.Supp. 275, 282 (D.N.J. 1992), *aff'd*, 993 F.2d 877 (3d Cir. 1993) (finding that "[w]hether a term is clear of ambiguous is . . . a question o law.")

"An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations."  *Id.*  In reviewing a contract to determine whether it is clear or ambiguous, the Court gives the terms of the contract their "'plain and ordinary meaning'" and interprets the writing as a whole.  *Id.* (quoting *Armco Inc. v. Glenfed Financial Corp.*, 746 F.Supp. 1249, 1252 (D.N.J. 1990).  This is true because "[t]he polestar of contract construction is to discover the intention of the parties as revealed by the language used by them." *Karl's Sales and Service, Inc. v. Gimbel Bros., Inc.*, 249 N.J. Super. 487, 492 (App. Div. 1991). Thus, a court "'should not torture the language of [a contract] to create ambiguity.'" *Nester v. O'Donnell*, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting *Stiefel v. Bayly, Martin & Fay, Inc.*, 242 N.J. Super. 643, 651 (App. Div. 1990).  Instead, the language of a contract "must be interpreted 'in accord with justice and common sense'" and where the terms of a contract are clear and unambiguous, they must be enforced as written.  *Karl's Sales*, 249 N.J. Super. at 492 -

16

93 (quoting *Krosnowski v. Krosnowski*, 22 N.J. 376, 386-87 (1956)).  Indeed, where a contract's terms are clear and unambiguous there is no room for interpretation or construction as "it is not the function of the court to make a better contract for the parties, or to supply terms that have not been agreed upon."  *Graziano v. Grant*, 326 N.J. Super. 328, 342 (App. Div. 1999).

Here, as part of their settlement, the parties agreed that the term "Competitive Business" would retain the definition set forth in the original Franchise Agreement.  As such, Competitive Business means "[a]ny business which operates, or grants franchises or licenses to others to operate, a business for the establishment, care and conditioning of lawns or other vegetation or any related or ancillary services, including, but not limited to, trees, shrubbery and other plant life." (Schmierer Cert., Ex. B at 8).  Given these terms their plain and ordinary meaning, the Court finds that it is clear that an irrigation services business is a Competitive Business prohibited by the parties' settlement agreement.  While the Rizzos suggest that irrigation services would only fall within the scope of the phrase "Competitive Business" if every term comprising its definition is given its broadest possible meaning (*see* Rizzo Opp. Br. at 4), that is simply not the case.  Indeed, Lawn Doctor is not, as the Rizzos note, attempting to prevent them from working in a pizzeria, an activity that could theoretically be prohibited by the restrictive covenant in light of the fact that in working in a pizzeria the Rizzos could be tasked with caring for the condition of tomatoes and basil (other types of vegetation).  (*Id.*)  Nor is Lawn Doctor seeking to prevent the Rizzos from working in a coffee shop where they could theoretically breach the terms of the restrictive covenant by working with coffee beans and tea leaves (providing services that involve other plant life).  (*Id.*)  Instead, Lawn Doctor is seeking to prevent the Rizzos from operating a lawn irrigation services business.

Irrigation services are not tangentially related to the "establishment, care and conditioning of lawns." Instead, they clearly fall within the plain and ordinary meaning of those terms. The Rizzos do not provide any real argument to the contrary. Instead, they focus on the fact that Lawn Doctor does not provide irrigation services to customers as part of its comprehensive lawn care package,[2] irrigation services are not mentioned in the parties' original Franchise Agreement, the Rizzos never provided irrigation services as franchisees of Lawn Doctor and the inclusion/exclusion of irrigation services from the applicable restrictive covenant was not discussed when the parties reached their settlement agreement.

For the reasons set forth above, the fact that the parties failed to address whether irrigation services would be prohibited by the restrictive covenant is irrelevant. The parties did not have to account for "every possible contractual provision to cover every contingency" in order to enter into a binding and enforceable settlement. *Bistricer*, 231 N.J. Super. at 147. Similarly, the fact that the Rizzos never provided irrigation services to customers when they operated their Lawn Doctor Franchise and the fact that Lawn Doctor does not generally provide

---

[2]The Court notes that Lawn Doctor takes issue with the Rizzos' argument that it does not provide irrigation services. In this regard, Lawn Doctor claims that it has developed promotional materials for irrigation services and that other Lawn Doctor franchisees provide irrigation services to customers under the Lawn Doctor brand. However, Lawn Doctor only supported these claims by pointing to two franchisees located over 1500 miles from the Rizzos who allegedly provide irrigation services under the Lawn Doctor Brand and by attaching a single, one-page document concerning lawn sprinklers copyrighted by Lawn Doctor in 1999 to its motion. This scant showing is underwhelming at best. Moreover, while, Lawn Doctor, at argument, also pointed to a "binder" of information related to "the amount of monies and expenditures that Lawn Doctor has spent on researching irrigation to include as a bigger part of its franchise business" (10/18/2012 Tr. at 6:20-23), Lawn Doctor, also refused to disclose the content of same, noting that it was not included in its motion papers because it is privileged and confidential. (*Id*. at 6:19). The Court entirely discounts the "binder" referenced by Lawn Doctor. To do otherwise would impermissibly allow Lawn Doctor to use the attorney-client privilege as both a sword and a shield.

those services to customers is a non-starter.  Here, the Rizzos restrictive covenant was not limited

to lawn care and conditioning services actually provided by Lawn Doctor.  Instead, the Rizzos

agreed to refrain from operating "a business for the establishment, care and conditioning of lawns

or other vegetation or any related or ancillary services, including, but not limited to, trees,

shrubbery and other plant life."  (Schmierer Cert., Ex. B at 8).  While it certainly would have

been better for the Rizzos to have negotiated for the more limited restrictive covenant, it is not

the Court's province to make a better contract for them.  *See Graziano*, 326 N.J. Super. at 342.

Instead, the Court must enforce the contract as written, which here clearly prohibits the Rizzos

from operating an irrigation services business.

The Rizzos, however, also suggest that the restrictive covenant should not be enforced as

written but should be limited to protect only Lawn Doctor's legitimate interests.  Relying on

*Ingersoll-Rand*, 110 N.J. 609, they argue that Lawn Doctor's need for protection should be

narrowly construed.  Further, they claim that since Lawn Doctor's interest in preventing the

Rizzos from operating an irrigation services business does not "'rise to the level of a proprietary

interest deserving of judicial protection,'" this Court should conclude that the "'restrictive

covenant merely stifles competition and therefore is unenforceable.'"  (Rizzos Opp. Br. at 6

(quoting *Ingersoll-Rand*, 110 N.J. at 635)).

Under New Jersey law, where reasonable, covenants not to compete are valid and

enforceable.  *See Jackson Hewitt*, 2008 WL 834386 at *6.  A restrictive covenant "will generally

be found to be reasonable where it simply protects the legitimate interests of the employer,

imposes no undue hardship on the employee, and is not injurious to the public.  *Solari Indus.,*

*Inc. v. Malady*, 55 N.J. 571, 576 (1970).  Furthermore, unlike restrictive covenants contained in

the context of employment contracts, restrictive covenants in the franchise context are afforded additional latitude.  Indeed, because a covenant not to compete in a franchise relationship is "similar to a covenant not to compete ancillary to the sale of a business[,]" such covenants "must be freely enforced."  *Jackson Hewitt*, 2008 WL 834386 at *7 (citing *Jiffy Lube*, 834 F.Supp. At 691).

Here, "L[awn] D[octor] has a legitimate interest in protecting its trade secrets, confidential information, customer relationships, and its good will."  (Memorandum Opinion of 6/27/2012 at 5 (citing *Whitmyer Bros., Inc. v. Doyle*, 58 N.J. 25, 33 (1971); *Jiffy Lube Int'l, Inc. v. Weiss Brothers, Inc.*, 834 F.Supp. 683, 691 (1993)).  The Court further finds that the restrictive covenant contained in the parties' settlement agreement protects these interests.  While Lawn Doctor has never provided irrigation services in the Rizzos' Franchise Territory, indeed Lawn Doctor has never provided irrigation services within 1500 miles of the Rizzo's Franchise Territory, that does not alter the fact that preventing the Rizzos from operating such a business helps Lawn Doctor protect its customer relationships and its good will.  As such, Lawn Doctor is not simply trying to enforce a restrictive covenant to stifle competition.  Instead, it is attempting to protect its good will and customer relationships, legitimate interests that it is entitled to protect.

In addition, while the Rizzos' ability to earn a living providing lawn care services, including irrigation services, will certainly be impacted by the enforcement of the parties' restrictive covenant, the Court finds that said covenant does not impose an undue hardship on them.  In reaching this conclusion, the Court is mindful of the fact that the Rizzos not only agreed to the definition of "Competitive Business" when they first entered the Franchise Agreement 10 years ago, but also did

so again just recently when they agreed to settle this matter.  Further, the Court finds that the restrictive covenant is reasonable because it lasts only 18 months and only prevents the Rizzos from providing lawn care services, including irrigation services, within 50 miles of the Rizzos' former Franchise Territory or within any territory granted by Lawn Doctor to another franchisee.  *See,e.g., Jackson Hewitt*, 2008 WL 834386 at * (finding no undue hardship where restrictive covenant imposed 2-year time restriction and 10-mile geographic restriction); *A.T. Hudson & Co., Inc. v. Donovan*, 216 N.J. Super. 426, (App. Div. 1987) (finding no undue hardship where restrictive covenant prevented defendant from soliciting plaintiff's customers for 2 years); *Trans American Trucking Serv., Inc. v. Ruane*, 273 N.J. Super. 130, 134 (App. Div. 1994) (upholding 19-month injunction).  Under these circumstances, the Court finds that the Rizzos will not be exposed to undue hardship.

Finally, the Court finds that the parties' restrictive covenant is not injurious to the public.  Undoubtedly, there are plenty of lawn care business in the relevant geographic area who can provide lawn care services, including irrigation services, to the public.  *See Jackson* Hewitt, 2008 WL 834386 at *8 (finding no injury to public where ample tax return preparation businesses existed in area subject to restrictive covenant); *Jiffy Lube*, 834 F.Sup. at 693 (finding no impact on public interest by public's inability to have cars lubricated by defendant in area subject to restrictive covenant).  As a result, there would be no injury to the public if the Rizzos are made to abide by the terms of the restrictive covenant.

Under these circumstances, the Court finds that the parties' restrictive covenant is valid and enforceable.  Not only must it be entitled to more latitude than a similar provision contained in an employment contract, such as that at issue in the *Ingersoll-Rand* case relied upon by the Rizzos, but,

for the reasons set forth above, the Court finds that the restrictive covenant at issue here also withstands scrutiny under *Solari*, "the seminal case establishing the modern New Jersey enforce-ability standards concerning [a] covenant not to compete in the employment setting." *Coskey's Television & Radio Sales and Service, Inc. v. Foti*, 253 N.J. Super. 626, 633-34 (App. Div. 1992). Consequently, the restrictive covenant as written is valid and enforceable and Lawn Doctor is entitled to a declaratory judgment that the Rizzos' irrigation services business violates same.

## IV.    Conclusion

For the reasons set forth above, Lawn Doctor's motion for a declaratory judgment and to enforce the parties' settlement agreement is GRANTED.  An appropriate Order follows.

Dated: December 11, 2012

s/Tonianne J. Bongiovanni
**TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
