# United States District Court
# District of New Jersey



LAWN DOCTOR, INC., a New Jersey
Corporation,

                *Plaintiff,*

— v —

JOSEPH RIZZO and ANNAMARIA
RIZZO,

              *Defendants.*

HONORABLE
TONIANNE J.
BONGIOVANNI

CIVIL ACTION NO.:
3:12-cv-01430-PGS-TJB

---

## RESPONSE TO SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S APPLICATION FOR CIVIL CONTEMPT SANCTIONS PURSUANT TO JANUARY 31, 2017 ORDER

---

JOSEPH RIZZO and
ANNAMARIA RIZZO,
*Pro Se Defendants*

13635 American Prairie Place
Lakewood Branch, Florida 34211
(941) 812-9986

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................... i

TABLE OF AUTHORITIES .......................................................... ii

JOSEPH & ANNAMARIA RIZZO'S SUPPLEMENTAL OPPOSITION
    TO LAWN DOCTOR'S INC. SUPPLEMENTAL MEMORANDUM OF
    LAW IN SUPPORT OF CIVIL CONTEMPT SANCTIONS ..................... 1

STATEMENT OF CASE AND FACTS ........................................ 2

ARGUMENT ................................................................................... 8

    I. Lawn Doctor did not Meet Its Burden of Proof that the Alleged

    Civil Contempt Results in an Award of Lost Profits and Used An

    Arbitrary Method of Calculation Without Supporting Evidence ..... 8

    II. Lawn Doctor has Failed to Meet Its Burden of Proof that it is

    Entitled to Royalties Under a Franchise Agreement ...................... 22

CONCLUSION ................................................................................ 23

# TABLE OF AUTHORITIES

**Cases:**                                                          **Page**

Eagle Indus., Inc., v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997)............................................................................................... 23

F.T.C. v. Trudeau, 579 F.3d 754, 771 (7th Cir. 2009).................................... 17

Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3rd Cir. 1995) .............. 21

Howard Johnson Co., Inc. v. Khimani,
    892 F.2d 1512, 1516 (11th Cir. 1990)............................................................ 17

John T. v. Del. Cnty. Intermediate Unit,
    318 F.3d 545, 552 (3rd Cir. 2003) ................................................................ 26

McGregor v. Chierico, 206 F.3d 1378, 1387 (11th Cir. 2000)....................... 24

National Drying Machinery, Co. v. Ackoff, 245 F.2d 192 (1957).............. 19

Nelson Tool & Machine Co., Inc. v. Wonderland Originals Ltd., 491 F.
    Supp. 268, 269 (E.D. Pa 1980) .................................................................. 25

OCE Business Systems, Inc. v. Slawter, 1990 U.S. Dist. LEXIS 15535 ..... 21

Quinter v. Volkswagon of America, 676 F.2d 969, 975 (3rd Cir. 1982)....... 17

Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3rd Cir. 1994).................... 15

Roe v. Operation Rescue, 919 F.2d 857, 868-69 (3rd Cir. 1994).................. 21

United States v. United Mine Workers,
    1947, 330 U.S. 258, 303-304 (1947) ........................................................... 18

## JOSEPH & ANNAMARIA RIZZO'S SUPPLEMENTAL OPPOSITION TO LAWN DOCTOR'S INC. SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF CIVIL CONTEMPT SANCTIONS

NOW COMES, JOSEPH RIZZO and ANNAMARIA RIZZO, the Defendants, hereinafter collectively referred to as "Rizzo", and respectfully requests that this Honorable Court deny the Plaintiff's, Lawn Doctor, Inc., ("Lawn Doctor"), Memorandum for Civil Contempt Sanction since it has failed to meet its burden of proof of damages.  Once again Lawn Doctor imposed an arbitrary figure, which is contrary to applicable law.  Further, Lawn Doctor admits in its brief that it has not met its burden of proof since it seeks further discovery.

Therefore, Rizzo requests that the civil contempt sanctions be denied and such other relief that the Court deems just and proper.

## STATEMENT OF CASE AND FACTS

Rizzo had executed a franchise agreement with Lawn Doctor, Lawn Doctor, Inc., in Florida. The franchise agreement was terminated.

Rizzo had stopped doing lawn care in the Bradenton/Sarasota area, so not to violate the non-compete. Rizzo decided to open their own business in the Gainesville area, which was beyond the fifty-mile radius stated in the non-compete agreement, and the company was originally called Advanced Environmental Services. Rizzo got different customers. Rizzo limited their services to irrigation, not lawn care, so not to violate any terms of the non-compete.

In January of 2013, Rizzo sold their assets from their business to Advanced Environmental Care, ("AEC"), which was owned and operated by Mr. Daniel R. Wilkerson. As part of the sale of the business, Rizzo provided financing to AEC via a Stock Purchase Agreement in the sum of $275,000.00, which was,

payable in July 2014, in which Rizzo never received any payment. AEC purchased Rizzo's trucks. AEC provided exclusively irrigation services (a separate service that Lawn Doctor did not provide to its customers), which was beyond the restrictive time period set forth in the original non-compete agreement.

Lawn Doctor's brief suggests that they had an indefinite period of time much more extensive zone in which the non-compete was applicable. However, the plain meaning of the contact dictates otherwise. Lawn Doctor attempts to expand the terms of the contract. There was a period of four months that Rizzo did not work at all after he sold his business – a fact that Lawn Doctor fails to state.

Lawn Doctor filed a complaint for breach of contract against Rizzo in the United States District Court District of New Jersey. Lawn Doctor filed a motion seeking injunction relief alleging that Rizzo breached the terms of the non-competition agreement

that was contained in the franchise agreement. Lawn Doctor alleged that Rizzo gave trucks, customer lists, assets of the business, telephone numbers, and good will to Mr. Wilkerson, instead of returning this to Lawn Doctor – facts have that yet to be proven. Lawn Doctor alleged that AEC's vans allegedly had Lawn Doctor's phone number and logo on them. Also, Lawn Doctor alleged that since Rizzo provided financing to a competing business, that Rizzo violated the non-compete.

On January 25, 2013, the District Court entered a Consent Injunction outlining Rizzo' obligation not to compete with Lawn Doctor. Included in the Order was the requirement that Rizzo transfer to Lawn Doctor all telephone numbers associated with Lawn Doctor's franchise that was formerly operated by Rizzo. Rizzo diligently complied with the Order.

Rizzo provided evidence from a Verizon email and bill that the telephone number "9417519885" painted on the vans had been opened and assigned to

4

AEC since May 4, 2013, four months after the Order was entered, and thus was impossible to violate any non compete agreement. Lawn Doctor erroneously alleged that Rizzo intentionally obtained that phone number which was similar to Lawn Doctor's number of 9417559885. The court held that "whatever numbers were assigned to Lawn Doctor by Verizon are not to be used by the new company." Rizzo or the purchaser of their company had a different number than Lawn Doctor.

Once again Lawn Doctor filed a Motion for Contempt alleging that Rizzo were violating the non-compete clause by using a telephone number that was associated with Lawn Doctor's business.

On December 11, 2012, the District Court entered an Order granting Lawn Doctor's Motion for Declaratory Judgment and to enforce a settlement agreement. In August 2013, Lawn Doctors filed a Motion for a Temporary Restraining Order requesting that Rizzo be refrained from being associated with

them in violation of a non-compete agreement. Lawn Doctor filed a motion for contempt. On November 4, 2013, the District Court entered a Letter Order, which granted Lawn Doctor's request for the assignment of certain telephone numbers used by Rizzo in connection with their former Lawn Doctor business and awarded Lawn Doctor's attorneys fees. The Court did not discuss whether sanctions should be entered against Rizzo for their alleged violation of the Consent Injunction. Once again Lawn Doctor filed a contempt motion. After a hearing, on March 14, 2014, the District Court ordered that Rizzo refrain from operating a competing business with Lawn Doctor and sanctioned Rizzo with a civil fine of $178,000.00, which allegedly represented the fair market value of the customer list.

Rizzo timely filed a Notice of Appeal on March 28, 2014. Even though the matter was pending before the Third Circuit, Lawn Doctor sought relief and filed a Motion to Amend the Final Judgment at the

6

District Court to include an award of attorney's fees pursuant to federal rule 60.

The Motion was granted. A final judgment was entered on August 5, 2015, which included the civil contempt fine of $178,000.00, plus attorney's fees and costs in the sum of $23,790.18.

On April 13, 2016, the Third Circuit Court of Appeals deemed that Lawn Doctor failed to meet its burden of proof as to the civil contempt fine and remanded the matter to the District Court.

Lawn Doctor filed an initial brief and now supplements its brief given the lack of merit of their initial brief. Lawn Doctor requests that the Court wait to render a decision and allow further discovery, since they failed to provide sufficient facts to support damages.

## ARGUMENT

I.  **LAWN DOCTOR DID NOT MEET ITS BURDEN OF PROOF THAT THE ALLEGED CIVIL CONTEMPT RESULTS IN AN AWARD OF LOST PROFITS AND USED AN ARBITRARY METHOD OF CALCULATION WITHOUT SUPPORTING EVIDENCE.**

Contrary to its argument in the Supplemental Memorandum, Lawn Doctor failed to meet its burden of proof that it was entitled to lost profits plus royalties.  What is most important for the Court to appreciate is that Lawn Doctor presented documents in its Petition regarding a customer list-- documents *never* presented to the court below.  Lawn Doctor, without any supporting evidence, states that Rizzo admitted selling the customer lists to Wilkerson.  Lawn Doctor is requesting further discovery to seek whether Rizzo received compensation for the irrigation business, a separate and distinct service than lawn service. There is absolutely no evidence that Rizzo was ever paid from

8

AEC or any irrigation services. It is undisputed Rizzo held an unpaid promissory note.

Lawn Doctor admits that Wilkerson had many new customers for irrigation services- but still fails to provide any evidence of comparison of lawn service between Lawn Doctor and Wilkerson. Further, there is no evidence of actual service between Wilkerson and any alleged Lawn Doctor's customers for the same service. However, Rizzo is the defendant in this matter. Lawn Doctor has provided no evidence that Rizzo benefitted from the sale between he and AEC.

Furthermore, Lawn Doctor asserts that the Courts have deemed "irrigation" is encompassed in the franchise agreement, however fails to cite to the specific opinion. Instead, Lawn Doctor speaks in generality as to what the decisions of the court present. Further, Rizzo has never admitted that he transferred customers to AEC.

9

Given their lack of evidence, Lawn Doctor wants to conduct discovery with respect to the customer list (even though a list does not equal damages). If the court granted such a request, then Rizzo should be entitled to seek documents and testimony regarding Lawn Doctor's alleged irrigation services, services that they surrendered to third parties, records of winterizing systems and service contracts within the zone that AEC provided similar services

Moreover, what is particularly important, is that Lawn Doctor presents emails with generic questions, nothing to substantiate their claims. An email from Vivian Quinones solely asked whether Advanced Enviro Care was still in business, not Rizzo. The second email was from a person named Mrs. Greco who went back to her old company Turfmaster. There is zero evidence that AEC or Rizzo conducted any services for Greco. The third customer, Mr. Shalkop, also went back to his previous company Barefoot Lawns.   Just because

their may have been inquiries as to whether Rizzo was still conducting business, there is a lack of evidence that Rizzo reacted to these inquiries. Rizzo was not involved with AEC or Dan Wilkerson.

Lawn Doctor also violated court rules where they were instructed not to introduce additional information, but then did so. Lawn Doctor suddenly found documents where Rizzo never had the opportunity to review and cross-examine. So Lawn Doctor continues to attempt to prove its case as well as conduct discovery beyond any applicable deadline. Rizzo contends that Lawn Doctor has failed to meet its burden of proof as to calculations for damages.

Contrary to the continuous claim by them, Lawn Doctor has failed to show proof that Rizzo did irrigation work – in fact Rizzo presented evidence that they did not do irrigation service. So, Lawn Doctor's argument is flawed on its face.

11

In fact by Lawn Doctor seeking more discovery on the matter further substantiates Rizzo's position that there is a lack of evidence to support damages.

Thus, the Lawn Doctor failed to meet its burden of proof that it suffered any losses. Why should Rizzo or the third party pay damages and consequences when there was a lack of evidence of damages? A value could not be placed on the customer list since Lawn Doctor does not perform irrigation services. Instead, Lawn Doctor wants to once again conduct discovery to try to meet its burden that is suffered damages.

Furthermore, Lawn Doctor's argument is contrary to the plain meaning of the franchise documents. Lawn Doctor alleges in its brief that the value of the franchise was worth $178,000. When the franchise next to Rizzo sold his business to Jim Duffy down in Fort Myers which now does Rizzo's original territory, he had a revenue of $220,000.00 but sold it to him for $30,000.00. The franchise north of

12

Rizzo tried to sell his franchise for $50,000 and no one wanted to buy it.  Due to the lack of interest, he ended up giving his customers to Rizzo and some to the franchise in Tampa. Lawn Doctor wishes they can get a dollar on a dollar for their franchise but it's very difficult to sell a franchise.  Moreover, there are severe restrictions on the franchises, which limits potential purchases.  A franchise owner could not sell a business to anyone. It cannot be sold to another lawn care company. A person can only sell it to someone that is going to do the franchise, thereby limiting potential purchasers. As a result, a franchise owner cannot sell their customers to anyone.  Lawn Doctor retains control over the franchises, which thereby defeats Lawn Doctor's appraisal of the business/customer list. Since Lawn Doctor failed to provide such evidence, their request for damages and attorney's fees must be denied.  Lawn Doctor failed to produce any

credible evidence of the fair market value of the business.

All of Lawn Doctor's evidence was hearsay and showed no proof, and thus there is no element of damages.   Therefore, Lawn Doctor alleges violation of an agreement and assessed damages on a customer list.   Not only does Rizzo dispute that they violated the Agreement, they dispute the amount of damages and an award of attorney's fees.   Lawn Doctor and the buyer of Rizzo's irrigation company provided separate and distinct services, so any alleged damages or calculation as to the value of the list is frivolous.   Lawn Doctor should have presented evidence of income from irrigation services, including irrigation repairs.   Lawn Doctor presented no such evidence since they do not perform the services.   Knowing their lack of evidence, Lawn Doctor seeks to conduct discovery as to whether any list was transferred and what the actual damages were.

14

Damages are available in civil contempt proceedings "to compensate for losses sustained by the [contemnor's] disobedience." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994). "Sanctions for civil contempt serve two purposes: `to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" *Robin Woods*, 28 F.3d at 400.

A compensatory award seeks "to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Id*. A district court has "wide, but not unlimited, discretion in fashioning appropriate compensatory sanctions." *Id*. at 401.  Lawn Doctor failed to provide any credible evidence as to the position they would have held Rizzo not allegedly provided a customer list to the third party.  There were no financial statements that were provided as to these accounts including net income.  There was no testimony as to whether the list contained on-

15

going customers.  Instead, Lawn Doctor assigned a random and arbitrary number.  They failed to meet their burden of proof.

Moreover, Lawn Doctor admits that it "routinely sells its customer lists to interested third parties, at fair market value."  There is no evidence before the Court of such contracts and the respective evaluations.  Instead, Lawn Doctor just arbitrarily renders a figure – however, such figure is contrary to the applicable law.  Lawn Doctor needs to submit substantial evidence to prove damages, which it has failed to do so.

Lawn Doctor alleges that it was entitled, as a sanction, to lost profits in the form of (1) the fair market value of its customer service list which it valued at $178,156.45; (2) the $275,000 value ascribed to it by the "willing buyer," Wilkerson; or (3) the profits generated by the operation of the business during the violation period, which it calculated based on historical numbers to be

16

$90,960. *See F.T.C. v. Trudeau, 579 F.3d 754, 771 (7th Cir. 2009)* . Lawn Doctor also argued that the award should include the royalties it would have received during the violation period, multiplied by a factor of 1.5 due to the "flagrant violation" of the Court's order, for a total of $50,106.48. Of course, Lawn Doctor failed to cite any case law or provides evidence to support such damages. Lawn Doctor is attempting to make a windfall on a scenario without any proven damages.

The burden in a civil contempt proceeding is on the petitioning party. *Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir. 1990). Contempt damages "must not exceed the actual damages caused the offended party by a violation of the court's order." *Quinter v. Volkswagon of America,* 676 F.2d 969, 975 (3ʳᵈ Cir. 1982).

As the Third Circuit stated, Lawn Doctor is arguing that Rizzo did not sell the customer list but at the same time now states that the list was

17

sold.   There was no such evidence that Rizzo was ever compensated for any customer list.   There is no evidence of the value of any customer list – Lawn Doctor failed to provide besides mere allegations of evidence that the customer list was tendered, whether the list was current, whether the customers did service with the new company, etc.

In *United States v. United Mine Workers,* 1947, 330 U.S. 258, 303-304 (1947),  Chief Justice Vinson defined the scope of civil contempt: "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. * * * Where compensation is intended, a fine is imposed, payable to the complainant. Such **fine must of course be based upon evidence of complainant's actual loss….**" (emphasis added).

18

Whether an award in civil contempt be measured in terms of a plaintiff's loss or a defendant's profit, such an award, by very definition, must be an attempt to compensate plaintiff for the amount he is out-of-pocket or for what defendant by his wrong may be said to have diverted from the plaintiff or gained at plaintiff's expense. Unless this limitation is recognized, a requirement that one party turn his profits over to his adversary itself becomes a punitive rather than a compensatory imposition. *National Drying Machinery, Co. v, Ackoff,* 245 F.2d 192 (1957) (a trademark infringement case).  The complainant has the burden of showing that the contemptuous conduct did, in fact, have substantial injurious effect upon his economic interest. This conception is particularly important here because in the original disposition of the present petitioner's trademark infringement claim it appeared to the district court that the plaintiff had suffered no economic injury from the

trademark infringement and that there was not "any
real danger of the plaintiff's product being brought
into disrepute by the defendant's use of the name.
The court added that "the case comes down to the
question whether the trademark owner will be
protected in a field which he has not actually
entered." *Id.*

The court further held that there was
no suggestion that the absence of economic injury
has been changed by the contemptuous conduct of the
defendants. The district court did say that the
"equities" have been changed by this willful
misconduct. But there can be no "equity" in a
compensatory award except as it provides a fair
equivalent for some loss. If, on the other hand, the
reference to changed "equities" means that the
defendant deserved punishment for a willful wrong,
the procedure must be that of
criminal contempt rather than the employment

20

of civil contempt as a punitive device.  In *National Drying,* the judgment of civil contempt was vacated.

Rizzo appreciate that a district court has the power to hold in civil contempt any party who has violated a court order. See *OCE Business Systems, Inc. v. Slawter*, 1990 U.S. Dist. LEXIS 15535, at 18 (E.D. Pa. Nov. 19, 1990); see also 18 U.S.C. § 401. A party moving for contempt must prove by clear and convincing evidence that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order. See *Roe v. Operation Rescue*, 919 F.2d 857, 868-69 (3d Cir. 1994). This is a harsh standard, and any ambiguities in the order must be found to favor the party charged with contempt. See *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3rd Cir. 1995).

Lawn Doctor failed to meet their burden of proof as to damages. There was no evidence of the dollar value of the unused customer list.

21

AEC provided solely irrigation services.   Lawn Doctor did not provide such services to its customers. Even if there was an exchange of list, the names were for two separate and distinct purposes, names and addresses that could be obtained in a phone book or on the internet.   Still, there was a lack of evidence as to the actual value of a list to calculate damages.

## II. LAWN DOCTOR HAS FAILED TO MEET ITS BURDEN OF PROOF THAT IT IS ENTITLED TO ROYALTIES UNDER A FRANCHISE AGREEMENT.

Lawn Doctor is not entitled to royalties since they provided no evidence of such a claim.   Lawn Doctor suddenly claims royalties for damages with once again a lack of evidence and contrary to the law.

If a contract's terms are clear and unambiguous, the court will interpret such terms according to their ordinary and usual meaning. Contract terms are held to be clear and unambiguous

"when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Eagle Indus., Inc.. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

Lawn Doctor provides no evidence or cites any applicable cases that it is entitled to royalties, a new damage claim never raised before the court. Lawn Doctor is trying to re-litigate and allege as many versions of damages as possible in this petition, without ever presenting them or arguing them before the Court previously.  They must be prevented at a second bite of the apple.

In their supplemental brief, Lawn Doctor presents unverified statements that Rizzo continued to provide work to three former Lawn Doctor's customers in January of 2014.  The District Court entered an order stating to Rizzo enforcing any applicable terms of the non-compete on March 14,

23

2014 – two months after any alleged infraction of the non-compete.

Lawn Doctor seeks civil contempt damages and thus cannot be seeking excessive funds. Civil contempt awards must be vacated if they appear to us excessive, or unsupported by clear and convincing evidence.   "In a civil contempt action, …damages must be proven by a preponderance of the evidence." *McGregor v. Chierico,* 206 F.3d 1378, 1387 (11th Cir. 2000) (reasoning "[w]e agree with the Fourth Circuit that, `since [the court] has already found by clear and convincing evidence that harm has occurred, the damages issue should be treated no differently than any other run-of-the-mill civil action.'" *Id.*

In their brief, Lawn Doctor alleges damages that it is allegedly entitled to, but there is a lack of evidence of lost profits, royalties or any measure of damages.  Realizing its lack of evidence, Lawn Doctor suggests egregious figures without

24

supporting documentation of the measure of damages. There is a lack of measurable damages given the lack of evidence.  Lawn Doctor cites cases that are inapplicable or in deviation of this court's jurisdiction.

Unfortunately, Lawn Doctor deviates from applicable law and seeks damages in the form of a criminal punishment, but more importantly, fails to provide any documented evidence of actual damages, except to its own opinion.  No value or expert testimony has been provided to the court.

In *Olivia v. Sankofa Academy Charter School*, (U.S.D.C. Civil Action No. 14-867, September 29, 2014), the court held that the severe remedy of civil contempt was warranted when there was a failure to meet the burden of proof or the party had the inability to pay.  *Id.*   "Civil contempt is a severe remedy, and should not be resorted to where there is fair ground of doubt." *Nelson Tool &*

25

*Machine Co., Inc. v. Wonderland Originals Ltd.*, 491
F. Supp. 268, 269 (E.D. Pa 1980).
These elements "must be proven by `clear and
convincing' evidence, and ambiguities must be
resolved in favor of the party charged with
contempt." *John T. v. Del. Cnty. Intermediate Unit*,
318 F.3d 545, 552 (3d Cir. 2003).

As admitted in Lawn Doctor's brief since they
seek additional discovery, they sustain that they
have not met their burden of proof by clean and
convincing evidence as to the element of damages.
There is a fair ground of doubt.

**WHEREFORE**, for the foregoing reasons, Joseph
Rizzo and Annamaria Rizzo, respectfully requests
that this Honorable Court deny an award of damages
and attorney's fees, deny further discovery, and
such other relief that the Court deems just and
proper.  If Lawn Doctor is allowed to conduct
discovery, then Rizzo shall be entitled to seek

26

documents and testimony as well as cross-examine any

witnesses.

                    Respectfully submitted,


                    _____
                    Joseph Rizzo
                    Rizzo
                    Pro Se


                    _____
                    Annamaria Rizzo,
                    Rizzo
                    Pro Se

# CERTIFICATE OF SERVICE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


LAWN DOCTOR, INC., a New Jersey Corporation,

*Plaintiff,*

v.


JOSEPH RIZZO and ANNAMARIA RIZZO,

*Defendants.*


I, Joseph Rizzo, Pro se Petitioner, on this 5th day of April 2017 served one copy of the Response to the Supplemental Memorandum of Law served by email to the below named party.

    Ross H. Schmierer, Esq.
    Joanne M.F. Wilcomes, Esq.
    Paris, Ackerman & Schmierer, LLP
    103 Eisenhower Parkway
    Roseland, New Jersey 07068
    (973) 228-6667
    *Attorneys for Plaintiff*

s/ Joseph Rizzo
Joseph Rizzo and Annamarie Rizzo
13635 American Prairie Place
Lakewood Branch, Florida 34211
(941) 812-9986
*Pro Se Defendants*