NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LAWN DOCTOR, INC.** | **Civil Action No. 12-1430 (TJB)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **JOSEPH RIZZO, et al.,** | |
| **Defendants.** | |

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court upon Lawn Doctor, Inc.'s ("Lawn Doctor")

supplemental motion for sanctions filed pursuant to the Court's January 31, 2017 Order.  (Docket

Entry No. 80).   Defendants Joseph Rizzo and Annamaria Rizzo (collectively, the "Rizzos")

oppose Lawn Doctor's motion.  The Court has fully reviewed all arguments raised in support of

and opposition to Lawn Doctor's motion.  The Court considers the aforementioned motion

without argument pursuant to L.Civ.R. 78.1(b).  For the reasons set forth more fully below,

Lawn Doctor's motion shall be held in abeyance and administratively terminated, pending

additional discovery.

### I.        Background and Procedural History

This matter arises out of a Franchise Agreement Lawn Doctor and the Rizzos entered into

on May 14, 2002.  The Franchise Agreement granted the Rizzos the right to own and operate a

Lawn Doctor lawn care business within a defined geographic area in Florida for a 20 year term.

On March 7, 2012, Lawn Doctor filed suit against the Rizzos alleging that as a result of their

breach of the Franchise Agreement, said agreement was terminated and the Rizzos failed to

comply with their contractual post-termination obligations.  (*See generally*, Lawn Doctor's Verified Complaint; Docket Entry No. 1).  At the same time it filed its Verified Complaint against the Rizzos, Lawn Doctor also moved for an order to show case and preliminary injunctive relief.  (*See generally*, Docket Entry No. 1-9).

The District Court, with the agreement of the parties, granted Lawn Doctor's application for a preliminary injunction.  (*See* Mem Op. and Order of 6/25/2012 at 6; Docket Entry No. 23). However, "[i]n light of the unreasonable scope of the restrictive covenant" contained in the Franchise Agreement, the District Court denied Lawn Doctor's application to enforce same.  (*Id*. at 6-7).  Instead, the District Court scheduled an evidentiary hearing on the enforceability of a less restrictive covenant not to compete and directed the parties to coordinate any relevant discovery with the undersigned.  (Letter Order of 7/6/2012 at 1; Docket Entry No. 25).  This Court set a discovery schedule on August 9, 2012.  (Order of 8/9/2012; Docket Entry No. 26). While discovery was ongoing, the Court conducted a telephone conference with the parties during which they advised that they agreed upon a consent injunction, which eliminated the need for the District Court to conduct a hearing regarding the appropriate scope of the restrictive covenant not to compete.  Instead, all they required was for the Court to determine whether "irrigation services" should be covered by the restrictive covenant.

In light of the foregoing, the evidentiary hearing set before the District Court was cancelled, and the Court set a briefing schedule regarding the parties' dispute as to whether "irrigation services" fell within the definition of a "Competitive Business" in the restrictive covenant of the parties' underlying Franchise Agreement.  (Letter Order entered on 10/1/2012; Docket Entry No. 28).  The term "Competitive Business" was defined in Section 4B of the Franchise Agreement to be, "[a]ny business which operates, or grants franchises or licenses to

2

others to operate, a business for the establishment, care and conditioning of lawns or other vegetation or any related or ancillary services, including, but not limited to, trees, shrubbery and other plant life." (Schmierer Cert.to Mot. to Enforce Settlement Agreement, Ex. B at 8; Docket Entry No. 30-2). The parties consented to have this issue and any other that might arise referred to the undersigned. (*See* 10/1/2012 Consent to Jurisdiction by U.S. Magistrate Judge; Docket Entry No. 29).

This Court determined that the parties had reached an enforceable settlement agreement regarding the Consent Injunction to be entered and that this was so despite the fact that they did not discuss whether "irrigation services" fell within the definition of "Competitive Business" contained in the Franchise Agreement. (Mem. Op. of 12/11/2012 at 13 -15; Docket Entry No. 35). With respect to the ultimate question of whether "irrigation services" fell within the aforementioned definition of "Competitive Business" the Court found that when the terms defining "Competitive Business" are given their plain and ordinary meaning "it is clear that an irrigation services business is a Competitive Business prohibited by the parties' settlement agreement." (*Id*. at 17). In reaching this conclusion, the Court determined:

> Irrigation services are not tangentially related to the "establishment, care and conditioning of lawns." Instead, they clearly fall within the plain and ordinary meaning of those terms. The Rizzos do not provide any real argument to the contrary. Instead, they focus on the fact that Lawn Doctor does not provide irrigation services to customers as part of its comprehensive lawn care package,[ ] irrigation services are not mentioned in the parties' original Franchise Agreement, the Rizzos never provided irrigation services as franchisees of Lawn Doctor and the includion/exclusion of irrigation services from the applicable restrictive covenant was not discussed when the parties reached their settlement agreement.
>
> For the reasons set forth above, the fact that the parties failed to address whether irrigation services would be prohibited by the restrictive covenant is irrelevant. The parties did not have to account for "every possible contractual provision to cover every contingency" in order to enter into a binding and enforceable

> settlement.  *Bistricer*, 231 N.J. Super. at 147.  Similarly, the fact
> that the Rizzos never provided irrigation services to customers
> when they operated their Lawn Doctor Franchise and the fact that
> Lawn Doctor does not generally provide those services to
> customers is a non-starter.  Here, the Rizzos['] restrictive covenant
> was not limited to lawn care and conditioning services actually
> provided by Lawn Doctor.  Instead, the Rizzos agreed to refrain
> from operating "a business for the establishment, care and
> conditioning of lawns or other vegetation or any related or
> ancillary services, including, but not limited to, trees, shrubbery
> and other plant life."  (Schmierer Cert. Ex. b at 8).  While it
> certainly would have been better for the Rizzos to have negotiated
> for the more limited restrictive covenant, it is not the Court's
> province to make a better contract for them.  *See Graziano*, 326
> N.J. Super. at 342.  Instead, the Court must enforce the contract as
> written, which here clearly prohibits the Rizzos from operating an
> irrigation services business.

(*Id*. at 18-19).  The Court further determined that the restrictive covenant also protected Lawn

Doctor's legitimate business interests, including Lawn Doctor's interest in protecting its

customer relationships and good will, did not impose an undue hardship on the Rizzos, and was

not injurious to the public.  (*Id*. at 19-21).  As a result, the Court found that "the restrictive

covenant as written [wa]s valid and enforceable" and, consequently "Lawn Doctor [wa]s entitled

to a declaratory judgment that the Rizzo's irrigation services business violates same."  (*Id*. at 22).

After the Court entered its Opinion and Order to this effect, this matter was closed and the parties

executed a Consent Injunction, which explicitly stated that "Irrigation services fall within the

definition of "Competitive Business[.]"  (Consent Injunction Order, ¶ (f); Docket Entry No. 37).

During the period of the restrictive covenant, an issue arose regarding the Rizzos' alleged

violation of same.  This led to Lawn Doctor filing a motion for a temporary restraining order.

(*See generally*, Motion of 8/21/2013; Docket Entry No. 38).  The Court held a hearing on Lawn

Doctor's motion for a temporary restraining order on September 13, 2013.  During this hearing,

the Court determined that the Rizzos violated the Consent Injunction entered in this matter (a)

when Defendant Joseph Rizzo ("J. Rizzo") became a lender to a "Competitive Business" within the restricted area defined in the Consent Injunction by transferring ownership of Advanced Enviro Care to Daniel Wilkerson ("Wilkerson") in return for a promissory note for $275,000 payable on July 31, 2014 (the "Wilkerson Deal); (b) by failing to properly remove the Lawn Doctor logo from certain work vans; and (c) by failing to reassign all of Lawn Doctor's telephone numbers back to Lawn Doctor. While the Court required Defendants to immediately correct the logo and telephone number issues, the Court left open the question of what other sanctions would be imposed. (*See* Tr. of Proceedings Held on 9/13/2013 Tr. at 26:6-23; Docket Entry No. 53). Of particular concern was the Wilkerson Deal.

According to the Consent Injunction entered in this matter on January 25, 2013, for 18 months from the date of the entry of the Consent Injunction, the Rizzos were:

> [E]njoined and restrained from having any interest as a disclosed or beneficial owner, investor, lender, partner director officer, manager, consultant, employee, representative or agent, or in any other capacity, in any Competitive Business located within (i) the Rizzos' Franchise Territory as defined in Exhibits A & B to Lawn Doctor's original OTSC; (ii) fifty (50) miles of the Franchise Territory's boundaries; or (iii) any territory granted by Lawn Doctor to any other Lawn Doctor franchisee. "Competitive Business" means any business which operates, or grants franchises or licenses to others to operate, a business for the establishment, care and conditioning of lawns or other vegetation or any related or ancillary services, including, but not limited to, trees, shrubbery and other plant life. Irrigation services fall within the definition of "Competitive Business[.]"

(Consent Injunction, ¶ (f)). Thus, even assuming that the Rizzos did not operate Advanced Enviro Care[1] themselves in contravention of the Consent Injunction, J. Rizzo's transfer of ownership of Advanced Enviro Care to Daniel Wilkerson in return for a secured promissory note

---

[1] Advanced Enviro Care is a "Competitive Business" as that term is defined in the Consent Injunction and is located in the restricted territory outlined in the Consent Injunction.

for $275,000 due to be paid on July 31, 2014, 6 days after the restrictive covenant outlined in the Consent Injunction expired, violated the terms of same because, as just outlined, according to the Consent Injunction, the Rizzos were prohibited "from having any interest as a    . . . lender . . . in any Competitive Business[.]"  The Court advised the Rizzos of this fact numerous times during the motion hearing held on September 13, 2013 and even afforded them the opportunity to undo the Wilkerson Deal or, as suggested by Lawn Doctor, assign the promissory note for $275,000 to Lawn Doctor:

- "I think its's a problem that clearly you made this transfer as a lender.  You're not supposed to do that.  It's prohibited under the consent judgment."  (Tr. of Proceedings Held on 9/13/2013 at 11:18-21; Docket Entry No. 53).
- "I do find that the consent injunction has been violated because Mr. Rizzo was a lender to a competitive business and the competitive business it's within the area -- the restricted area as outlined in the documents[.]"  (*Id.* at 14:17-22).
- "I am finding for today's purposes that there is a violation."  (*Id.* at 15:11-12).
- "I'm going to give you the opportunity to un[do] this deal that you made with Mr. Wilkerson.  And you can provide proof of that to us by the 27th of September.  And I will certainly consider that because you're not to be a lender in this business.  So, whatever the terms of the deal were, whether it included client lists, you need to -- I'm giving [you] the opportunity to undo it."  (*Id.* at 17:5-11).
- "I am finding that there is a violation of the consent injunction.  I think that's clear."  (*Id.* at 23:6-7).
- "And I'm going to give you the opportunity to bow out of this deal with Mr. Wilkerson by the 27th."  (*Id.*, at 23:10-12).
- "What I have is a consent injunction.  And a consent injunction clearly says that you can't loan money to a competing business.  So, I will say to you rhetorically and I'm not asking you to answer it.  What am I supposed to do about the fact that you violated it?  Even if I'm empathetic to your -- your dire financial strait, even if I think you didn't have a sinister motive, you violated this consent injunction and I have to do something about it."  (*Id.* at 25:13-20).
- "I'm giving you the opportunity to undo this. And if you undo it, it will certainly impact any other sanction."  (*Id.*, at 25:23-24).
- "And by the 27th give you the opportunity to undo the loan that you have done --·made with Mr. Wilkerson."  (*Id.*, at 26:3-5).
- "[B]y the 27th I'll give you the opportunity to tell me what, if anything has been done with this loan."  [*Id.*, at 27:20-22].
- "So before you write anything to me, let's see if anything happens with the loan being undone."  (*Id.*, at 28:4-5).
- "Well, whatever you sold to him and I don't know what you sold to him, you have to unsell to him."  (*Id.*, at 28:25 to 29:1).

- (Mr. Schmierer): "And -- and, Your Honor, I'll just say, obviously, I have to speak with my client to get authority, but if Mr. Rizzo wants to assign that promissory note over to my client and we get the proceeds of that sale in July 2014, I think that would be a reasonable solution." (The Court): "So that seed is planted for you, Mr. Rizzo." (*Id.*, at 29:7-13).

Despite the Court's cautionary warnings about the Wilkerson Deal, the Rizzos did not "undue" or "bow out of" the Wilkerson Deal; nor did they elect to transfer the promissory note to Lawn Doctor. Indeed, far from taking any of the actions suggested by the Court, the Rizzos elected to assign the promissory note back to Advanced Enviro Care. The Rizzos' decision in this regard did nothing to remedy their breach of the Consent Injunction. It likewise did nothing to assuage Lawn Doctor's fear or the Court's concern that what was sold to Wilkerson for $275,000 was anything but Lawn Doctor's customer list or other property/proprietary information.

In light of the foregoing, on March 14, 2014, the Court entered a Letter Order in which it found the Rizzos to be in contempt of court because, by entering the Wilkerson Deal, the Rizzos became a competitive lender thus violating the terms of the Consent Injunction.[2] (Letter Order of 3/14/2014 at 4; Docket Entry No. 55). In reaching this conclusion, the Court noted that "[w]hether Rizzo acted in good faith when he entered the Wilkerson Deal is irrelevant to the Court's finding of contempt as '[g]ood faith is not a defense to civil contempt.'" (*Id.* (quoting *American Bd. of Survey, Inc. v. Lasko*, 532 Fed. Appx. 66, 70 (3d Cir. 2013) (quoting *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994)) (internal quotation marks omitted)).

---

[2] "To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendants disobeyed the order." (Letter Order of 3/14/2014 at 4 (quoting *American Bd. Of Surgery, Inc. v. Lasko*, 532 Fed. Appx. 66, 69-70 (3d Cir. 2013); *Harris v. City of Phila.*, 47 F.3d 1311, 1326 (3d Cir. 1995); *T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (citations omitted)); (Docket Entry No. 55).

Relying on its broad discretion to fashion the appropriate civil contempt sanction, the Court

determined that requiring the Rizzos to pay $178,000, what Lawn Doctor established the fair

market value of its customer list to be, was the appropriate civil contempt sanction.  (*Id*. at 5).[3]

In reaching this conclusion, the Court noted:

> [T]he Consent Injunction which was entered in this matter on
> January 25, 2013, and with the benefit of counsel for the
> Defendants, clearly prohibited Defendants from either operating
> Advanced Enviro Care in the restricted territory themselves or
> acting as a competitive lender to someone buying and intending to
> operate the company in said area.  Defendants not only violated the
> Consent Injunction when Rizzo entered into the Wilkerson Deal,
> but then, after being specifically informed by the Court that the
> Wilkerson Deal violated the Consent Injunction and, after being
> given the opportunity to remedy the violation before the Court
> determined what sanction should be entered, Defendants took no
> actions to try to ameliorate their violation.  Nor have the
> Defendants submitted any evidence that the Wilkerson Deal did
> not include Plaintiff's customer list.  Defendants' actions post the
> September 13, 2013 motion hearing, *i.e.*, Rizzo's assignment of the
> promissory note for $275,000 back to Advance Enviro Care, only
> exacerbated the problem.

(*Id*. at 5-6).

The Rizzos appealed the Court's determination:  (1) arguing that the Court erred in

determining that they violated the non-complete clause; (2) arguing that the civil contempt award

was arbitrary; and (3) challenging the Court's award of attorneys' fees and costs.  (*Lawn Doctor*

*Inc. v. Rizzo*, 646 Fed. Appx. 195, 197 (3d Cir. 2016); Docket Entry No. 67-1).  The Court of

Appeals for the Third Circuit, however, determined that "[a]mple evidence supports the Court's

finding that the Rizzos violated the consent injunction" and that any "protestations that they

---

[3] While not addressed in detail, the Court declined to impose the royalties sought by Lawn
Doctor.  (*See id.* at 4-6 (noting Lawn Doctor sought $50,106.48 in royalties in addition to the
profits it lost as a result of the creation and then sale of Advanced Enviro Care to Wilkerson, but
only imposing a sanction of $178,000, which represented one way to calculate said profits, with
no royalties)).

acted in good faith are of no avail."  (*Id.* at 199 (citing *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d

575, 582 (3d Cir. 2010) ("good faith is not a defense to civil contempt.")))   The Third Circuit

further determined that "the Rizzos are foreclosed from arguing that they did not violate the

consent injunction because AEC solely provided irrigation services, which the Rizzos maintain

were not part of the non-compete covenant."  (*Id.*)  In this regard, the Third Circuit noted that

"[p]ursuant to the declaratory judgment, the Consent Injunction was revised to explicitly include

irrigation services within the definition of 'Competitive Business'" and "[t]he Rizzos did not

appeal from the declaratory judgment."  (*Id.* at 199-200)  Therefore, the Third Circuit held that

the Rizzos waived any objection to the consent injunction.  (*Id.*)  In addition, the Third Circuit

upheld the Court's award of attorneys' fees and costs stating that it was "persuaded that the

Rizzos willfully disregarded the injunction and that the Court's decision to award attorneys' fees

as compensation for their contempt was not an abuse of discretion."  (*Id.* at 201).

  However, with respect to the $178,156.45 civil contempt sanction award, the Third

Circuit determined that because the burden in a civil contempt proceeding is on the petitioning

party, "the Court erred in shifting the burden onto the Rizzos to prove that the customer service

list had *not* been transferred as part of the Wilkerson Deal."  (*Id.*)  As a result, it determined that

it was an abuse of discretion for the sanctions award to be based on the value of the customer list,

which the Court assumed, "in the *absence* of evidence to the contrary, had been transferred to a

third party."  (*Id.*)  Consequently, the Third Circuit vacated the award of $178,156.45, and

remanded the issue "for consideration of compensatory damages consistent with the evidence in

the record."  (*Id.*)

  In light of the Third Circuit's Opinion, the Court directed the parties to submit

supplemental briefing on the issue of what contempt damages should be awarded to Lawn

Doctor.  (*See* Letter Order entered 5/25/2016; Docket Entry No. 68).  After considering the briefing submitted, the Court determined that the information submitted by Lawn Doctor did not adequately support the lost profits sanction it sought.  As a result, the Court denied Lawn Doctor's supplemental motion for sanctions without prejudice and gave Lawn Doctor an opportunity to submit additional evidence in support of its request for contempt sanctions.  (*See* Order of 1/31/2017 at 1-2; Docket Entry No. 78).  The instant supplemental motion for sanctions followed.

In its motion for sanctions, Lawn Doctor relies on the following evidence to prove that its customer list was transferred to Advanced Enviro Care:[4]

(1) The following statements made by the Rizzos, which Lawn Doctor argues establish that they transferred irrigation customers to Advanced Enviro care:

    (a) The Rizzos' statement in their opposition to Lawn Doctor's first supplemental motion for sanctions that "'[Advanced] provided exclusively irrigation services (a separate service that Lawn Doctor does not provide to its customers) in part of the territory that [the Rizzo's] operated their Lawn Doctor business'" (Lawn Doctor Br. of 3/3/2017 at 6; Docket Entry No. 80 (quoting Rizzos Op. Br. of 7/14/2016 at 3; Docket Entry No. 75));

    (b) J. Rizzo's testimony stating, "**I only had irrigation customers you know.**  It was only a handful of customers that I owned at the time and that I just did on, like , a maintenance basis . . . Whatever you do from there has nothing to do with me . . . So as far as selling customers, the customers that I had weren't Lawn Doctor's customers.  Some were, but went to another company, but then came back. . . .  (*Id*. (quoting Rizzos Op. Br. of 7/14/2016 at 3 (emphasis added)));

    (c) The Rizzos' statement in their opposition to Lawn Doctor's first supplemental motion for sanctions that "'there is no evidence of actual service between Wilkerson and any alleged Lawn Doctor's customers for the same service.'" (*Id*. (quoting Rizzos Op. Br. of 7/14/2016 at 10));

---

[4] Lawn Doctor presents two theories regarding the transfer of its customer list to Advanced Enviro Care, advocating that it was transferred to it as part of the Wilkerson Deal and/or through J. Rizzo's continued work on behalf of Advanced Enviro Care in the restricted territory during the entire 18 month time period outlined in the restrictive covenant.  (Lawn Doctor Br. of 3/3/2017 at 2; Docket Entry No. 80).

     (d) The Rizzos' statement in their opposition to Lawn Doctor's first supplemental motion for sanctions that "'Lawn Doctor and the ***buyer of Rizzo's irrigation company*** provided separate and distinct services, so any alleged damages or calculation as to the value of the list is frivolous.'"  (*Id*. at 7 (quoting Rizzos Op. Br. of 7/14/2016 at 13 (emphasis added))); and

     (e) The Rizzos' statement in their opposition to lawn Doctor's first supplemental motion for sanctions that "'[Advanced] provided solely irrigation services. Lawn Doctor did not provide such services to its customers.  Even if there was an exchange of list, **the names were for two separate and distinct purposes** . . . (*Id*. (quoting Rizzos Op. Br. of 7/14/2016 at 21 (emphasis added)));

(2) J. Rizzo's continued involvement with Advanced Enviro Care in the restricted territory during the 18 month time period outlined in the restrictive covenant as evidenced by:

     (a) the license plate reading "ADVANC3D" on the car registered to him; (*Id*. at 10 (citing Warner Cert. of 8/20/2013, ¶ 20 and Ex. F; Docket Entry No. 38-9));

     (b) the fact that J. Rizzo remained on site at the Lena Road address, which was where his offices had been as a Lawn Doctor franchisee (*Id*. at 10 (citing Warner Cert. of 8/20/2013, ¶ 4));

     (c) the text message between Vivian Quuinones, a Lawn Doctor customer, and James Duffy, the principal of Lawn Doctor's new franchisee in the relevant territory, J&D Duffy Enterprises, LLC, in which Ms. Quinones wrote Mr. Duffy, "'Jim, **joe called me today that he is <u>not</u> out of business** and that I paid for coralbean [one of the properties] until November 2014.  He wants me to ask you for my money back, since you lie and he dies [sic] still in business.'"  (*Id*. at 11 (quoting Frith Cert. of 3/7/2014, ¶ 12 and Ex. B (emphasis added); Docket Entry No. 77-6));

     (d) the statement Julia Greco, a Lawn Doctor customer, made to Mr. Duffy that "she was returning to her 'old supplier'"  (*Id*. at 12 (quoting Frith Cert. of 3/7/2014, ¶ 18)); and

     (e) the representation Dick Shalkop, a Lawn Doctor customer, made to Mr. Duffy that he no longer needed Lawn Doctor's services because he switched to J. Rizzo's services.  (*Id*. (citing Frith Cert. of 3/7/2014, ¶ 21)); and

(3) The following pre-pay order forms and invoice indicating that Advanced Enviro Care contacted Lawn Doctor customers in the restricted territory during the 18 month time period outlined in the restrictive covenant:

      (a) two pre-pay order forms for lawn service that Ms. Quinones received from Advanced Enviro Care (*Id*. at 11 (citing Frith Cert. of 3/7/2014, ¶ 9 and Ex. A)); and

      (b) an invoice for weed control Ms. Greco received from Advanced Enviro Care (*Id*. at 11-12 (citing Frith Cert. of 3/7/2014, ¶ 16 and Ex. C)).

Lawn Doctor argues that the foregoing is more than sufficient evidence to prove that the Rizzos transferred the customer list to Advanced.  As a result, Lawn Doctor asks that compensatory damages as a contempt sanction be entered against the Rizzos in the amount of its lost profits, which Lawn Doctor suggests can be calculatesd as either:  (1) the fair market value of its customer list ($178,000); (2) the profits that historically were generated by J. Rizzo during the 18 month period outlined in the restrictive covenant ($90,960); or (3) per diem sanctions of $200 per day ($109,500).  Lawn Doctor additionally seeks royalties in the amount of $50,106.48.  Further, in the event the Court was to determine that Lawn Doctor had still not carried its burden of proof, Lawn Doctor requests permission to conduct limited discovery on whether its customer list was transferred to Advanced Enviro Care.

The Rizzos oppose Lawn Doctor's renewed supplemental motion for sanctions.[5]  In their opposition, they take issue with the lack of evidence "of actual service between Wilkerson and any alleged Lawn Doctor's customers for the same service[,]" focusing on the fact that "Wilkerson had many new customers for irrigation services[,]" but there was no "comparison of lawn service between Lawn Doctor and Wilkerson."  (Rizzo Op. Br. at 9).  Indeed, the Rizzos

---

[5] While the Rizzos apparently submitted a copy of their response in opposition to the Court and Lawn Doctor, they never filed same with the Clerk of the Court.  As a result, their opposition does not currently appear on the Docket in this matter.  So that the record is complete, the Court is directing the Clerk of the Court to file the Rizzo's opposition as a separate Docket Entry at the time it files this Memorandum Opinion and Order.  So there is no misunderstanding, in the future, the Rizzos are directed to file any documents directly with the Clerk of the Court.  The undersigned may not be used as a conduit for same.

claim that "Lawn Doctor asserts that the Courts have deemed 'irrigation' is encompassed in the franchise agreement, however [sic] fails to cite to the specific opinion" and argue:

> AEC provided solely irrigation services.  Lawn Doctor did not provide such services to its customers.  Even if there was an exchange of list, the names were for two separate and distinct purposes, names and addresses that could be obtained in a phone book or on the internet.

(*Id*. at 9, 22).

In addition, the Rizzos also note that Lawn Doctor has not submitted any evidence that "Rizzo benefited from the sale between he and AEC."  (*Id*. at 9) The Rizzos also contend that J. Rizzo "never admitted that he transferred customers to AEC."  (*Id*.)

With respect to the specific customers identified by Lawn Doctor, the Rizzos argue that the evidence submitted does not substantiate Lawn Doctor's claims.  In this regard, the Rizzos contend that the "email from Vivian Quinones solely asked whether Advanced Enviro Care was still in business, not Rizzo."  (*Id*. at 10).  Similarly, the Rizzos argue that Mrs. Greco went back to her previous company Turfmaster and "[t]here is zero evidence that AEC or Rizzo conducted services for Greco."  (*Id.*)  Likewise, the Rizzos claim that Mr. Shalkp "also went back to his previous company Barefoot Lawns."  (*Id.*)  The Rizzos maintain that simply because there "may have been inquiries as to whether Rizzo was still conducting business, there is a lack of evidence that Rizzo reacted to these inquiries.  Rizzo was not involved with AEC or Dan Wilkerson."  *Id*. at 11).  They also argue that Lawn Doctor's reliance on new information is inappropriate because Lawn Doctor was "instructed not to introduce additional information, but then did so."  (*Id*. at 11).

The Rizzos also criticize Lawn Doctor for failing to prove that they did irrigation work and argue that "in fact Rizzo presented evidence that they did not do irrigation service."   They

further argue that Lawn Doctor failed to prove that it suffered any losses and that "[a] value

could not be placed on the customer list since Lawn Doctor does not perform irrigation services."

(*Id*. at 12).  The Rizzos further contend that Lawn Doctor's $178,000 estimate of what the

Rizzos' franchise was worth is not supportable because "a franchise owner cannot sell their

customers to anyone.  Lawn Doctor retains control over the franchises, which thereby defeats

Lawn Doctor's appraisal of the business/customer list."  (*Id*. at 13).

     In addition, the Rizzos "dispute that they violated the Agreement, they dispute the

amount of damages and an award of attorneys' fees."  (*Id*. at 14).  In this vein, the Rizzos argue:

> Lawn Doctor and the buyer of Rizzo's irrigation company
> provided separate and distinct services, so any alleged damages or
> calculation as to the value of the list is frivolous.  Lawn Doctor
> should have presented evidence of income from irrigation services,
> including irrigation repairs.  Lawn Doctor presented no such
> evidence since they do not perform the services.  Knowing their
> lack of evidence, Lawn Doctor seeks to conduct discovery as to
> whether any list was transferred and what the actual damages were.

(*Id*. at 14).

     The Rizzos argue that Lawn Doctor's evidence is insufficient because:

> Lawn Doctor failed to provide any credible evidence as to the
> position [it] would have held [had] Rizzo not allegedly provided a
> customer list to the third party.  There were no financial statements
> that were provided as to these accounts including net income.
> There was no testimony as to whether the list contained on-going
> customers. . . . Instead, Lawn Doctor just arbitrarily renders a
> figure – however, such a figure is contrary to the applicable law.
> Lawn Doctor needs to submit substantial evidence to prove
> damages, which it has failed to do so.

(*Id*. at 15-16).     Indeed, the Rizzos cliam, "[t]here was no such evidence that Rizzo was ever

compensated for any customer list.  There is no evidence of the value of any customer list –

Lawn Doctor failed to provide besides mere allegations of evidence that the customer list was

tendered, whether the list was current, whether the customers did service with the new company,

etc." (*Id*. at 18).  In this regard, the Rizzos argue "[t]here was no evidence of the dollar value of the unused customer list." (*Id*. at 21).

To the extent the Court considers permitting Lawn Doctor to conduct discovery to support its request for contempt damages, the Rizzos argue they should be entitled to discovery too.  (*Id*. at 26-27).  In this regard, the Rizzos argue they should be entitled to "seek documents and testimony and as well as cross examine any witnesses."  (*Id*. at 26-27).  With respect to the scope of the discovery they would seek, the Rizzos argue they "should be entitled to seek documents and testimony regarding Lawn Doctor's alleged irrigation services, services they surrendered to third parties, records of winterizing systems and service contracts within the zone that AEC provided similar services." (*Id*. at 10).

Finally, the Rizzos take issue with Lawn Doctor's request for royalties, arguing that it is an unjustified, new damages claim never before raised to the Court.  (*Id*. at 23).

## II.     Analysis

As the Third Circuit explained, "[t]he burden in a civil contempt proceeding is on the petitioning party.  *Lawn Doctor, Inc. v. Rizzo*, 646 Fed. Appx. 195, 201 (3d Cir. 2016) (citing *Howard Johnson, Co. v. Khimari*, 892 F.2d 1512, 1516 (11th Cir. 1990)).  "Sanctions for civil contempt serve two purposes:  'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'"  *Robin Woods*, 28 F.3d at 400 (citing *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3d Cir. 1984)).  The purpose of a compensatory award is "to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed."  *Id*.  (citation omitted).  The Court has "wide, but not unlimited, discretion in fashioning appropriate compensatory sanctions."  *Id*. at 401.

15

Here, the only question for the Court's consideration is the value of the contempt sanctions to which Lawn Doctor is entitled. This Court already determined and the Third Circuit has already affirmed that the Rizzos violated the Consent Injunction and that the Rizzos are "foreclosed from arguing that they did not violate the consent injunction because AEC solely provided irrigation services, which the Rizzos maintain were not party of the non-compete covenant." *See Lawn Doctor*, 646 Fed. Appx. at 200 (holding that "ample evidence supports the Court's finding that the Rizzos violated the consent injunction" and that the Rizzos "waived any objection" to the Consent Injunction which "was revised to explicitly include irrigation services within the definition of 'Competitive Business'" because they did not appeal from the declaratory judgment). Similarly, this Court already determined and the Third Circuit already affirmed the Court's award of attorneys' fees and costs to Lawn Doctor. *Id*. at 201 (holding that "we are persuaded that the Rizzos willfully disregarded the injunction and that the Court's decision to award attorneys' fees as compensation for their contempt was not an abuse of discretion" and noting that "because the Rizzos failed to file a second or amended notice of appeal, we lack jurisdiction to consider the *amount* of attorneys' fees awarded.") *Id*. The only issue remanded for further proceedings was the Court's consideration of the value of the sanctions to be imposed. *Id*. On this issue, the Third Circuit determined that the Court had improperly shifted "the burden onto the Rizzos to prove that the customer service list had *not* been transferred as part of the Wilkerson Deal." As a result, the Circuit found that the Court abused its discretion "in basing its sanctions award on the value of the customer list which it assumed, in the *absence* of evidence to the contrary, had been transferred to a third party." *Id*.

At the time the Court entered its decision, it believed, albeit mistakenly, that there was sufficient information to support a finding that Lawn Doctor's customer list had been transferred

to Advanced Enviro Care.  As a result, the Court did not, at that time, seek to reopen the

proceedings to allow discovery to evaluate the appropriate sanction for the Rizzos' contempt;

though it could have done so had it thought additional evidence was necessary.  *See, e.g.*, *Best*

*Sign Systems, Inc. v. Chapman*, Civil Action No. 09-5244 (FLW), 2012 WL 4505996, * (D.N.J.

Sept. 26, 2012) (noting that matter was reopened for "limited purpose" of addressing application

to hold defendant in contempt and, after hearing, court allowed plaintiff to take discovery to

determine whether defendant violated consent order); *Alopex Industries, Inc. v. Seibel*, 61 F.3d

919, 1995 WL 424848, *1 (Fed. Cir. 1995) (noting that District Court reopened proceedings to

allow discovery for evaluation of contempt); *Tracfone Wireless, inc. v. GCA Electornics, LLC*,

950 F.Supp. 2d 1326, (June 5, 2013) (noting that court reopened case with respect to defendants

based on their violation of final judgment, held defendants to be in contempt and allowed

expedited discovery concerning scope of defendants' violation to aid in determination of

appropriate sanction).  While the Court did not reopen these proceedings, it never, despite the

Rizzos' claim to the contrary, found that doing so would be inappropriate.  Nor does It read the

Third Circuit's opinion as precluding same.  While the Third Circuit indicated that any

compensatory contempt damages must be "consistent with the evidence in the record[,]" it never

prohibited the record from being reopened.  *Lawn Doctor*, 646 Fed Appx. at 201.

Here, the Court finds that reopening the record is appropriate.  As such, the Court shall

consider the additional evidence submitted by Lawn Doctor in support of its supplemental

motion for sanctions, such as evidence of J. Rizzo's continued involvement with Advanced

Enviro Care in the restricted territory during the 18 month time period outlined in the restrictive

covenant and evidence indicating that Advanced Enviro Care contacted Lawn Doctor customers

in the restricted territory during the 18 month time period outlined in the restrictive covenant.

While this additional evidence submitted by Lawn Doctor may be sufficient for Lawn Doctor to

carry its burden to prove that Lawn Doctor's customer list was inappropriately transferred to

Advance Enviro Care,[6] the Court shall also afford Lawn Doctor the opportunity to conduct

further discovery regarding said transfer.  More specifically, the Court shall permit Lawn Doctor

to (1) subpoena Advanced Enviro Care for information concerning its customer and financial

records between January 2013 and July 2014; said subpoenas may include a request for Rule

(30)(b)(6) deposition testimony from Advanced Enviro Care; (2) subpoena Daniel Wilkerson for

testimony and records regarding the Wilkerson Deal and what was transferred to him in return

for the $275,000 promissory note; and (3) subpoena Ken Champman, Esq., for records and

testimony regarding the Wilkerson Deal.  If after conducting this discovery, Lawn Doctor

believes that additional discovery is warranted, it can make an application for same.

The Court understands that the Rizzos have also requested the opportunity to conduct

discovery.  At this juncture, that request is denied.  The limited discovery being permitted now

concerns solely the Rizzos' violation of the Consent Injunction and the appropriate sanction to be

imposed in light of same.  The discovery the Rizzos seek to pursue, as outlined in their

opposition brief: "documents and testimony regarding Lawn Doctor's alleged irrigation services,

services they surrendered to third parties, records of winterizing systems and service contracts

---

[6] Lawn Doctor may establish that its customer list was transferred to Advanced Enviro Care
either by putting forth sufficient evidence to establish that it was transferred as part of the
Wilkerson Deal and/or that it was transferred to Advanced Enviro Care through J. Rizzo's
continued affiliation with the company while the restrictive covenant was in effect, despite his
representations to the Court to the contrary.  The Court notes that significant evidence has
already been presented that indicates J. Rizzo continued to operate a "Competitive Business" in
the restricted territory during the 18 month period outlined in the restrictive covenant, despite his
multiple representations that this was not so.  The Rizzos are reminded of their obligations under
Rule 11 and are cautioned that additional sanctions may be imposed if the Court determines that
Rule 11(b) has been violated.

within the zone that AEC provided similar services[,]" is completely irrelevant.  (Rizzos Op. Br. at 10).  As explained *ad nauseam* whether and to what extent Lawn Doctor provided irrigation services is immaterial.  The Court determined that irrigation services were included in the definition of "Competitive Business."  The Rizzos never appealed that decision, and, as the Third Circuit determined, they are foreclosed from challenging the inclusion of irrigation services in the definition of "Competitive Business" now.  *See Lawn Doctor*, 646 Fed. Appx.at 199-200.  Further, to the extent the Rizzos seek to challenge the value assigned to Lawn Doctor's customer list, years ago the Court determined that Lawn Doctor established that the fair market value of its customer list was $178,000.  The Court does not intend to reconsider that determination.

Lawn Doctor is directed to serve the discovery outlined above by **November 6, 2017**. The parties are directed to submit a written status update regarding said discovery by **December 22, 2017**.

### III.    Conclusion

For the reasons stated above, Lawn Doctor's supplemental motion for sanctions shall be held in abeyance and administratively terminated pending the additional discovery outlined above.   This matter is reopened for the limited purpose of conducting the aforementioned discovery and determining the appropriate contempt sanction.  An appropriate Order follows.

Dated:  October 24, 2017

s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**