# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LAWN DOCTOR, INC.** | Civil Action No. 12-1430 (TJB) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| **JOSEPH RIZZO, et al.,** | |
| Defendants. | |

**BONGIOVANNI, United States Magistrate Judge**

Pending before the Court is Lawn Doctor, Inc.'s ("Lawn Doctor") supplemental motion for sanctions filed pursuant to the Court's January 31, 2017 Order. (Docket Entry No. 80). Defendants Joseph Rizzo ("J. Rizzo" or "Mr. Rizzo") and Annamaria Rizzo ("A. Rizzo") (collectively, the "Rizzos") oppose Lawn Doctor's motion. The Court administratively terminated Lawn Doctor's motion via its Memorandum Opinion and Order entered on October 25, 2017, holding its decision on same in abeyance pending limited additional discovery. Docket Entry Nos. 86 & 87. That discovery is complete. As such, the Court now considers Lawn Doctor's supplemental motion for sanctions. The Court has fully reviewed all arguments raised in support of and opposition to Lawn Doctor's motion. The Court considers Lawn Doctor's motion without argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Lawn Doctor's supplemental motion for sanctions is GRANTED.

**I.	Background and Procedural History**

Given the parties and the Court's familiarity with this matter, the Court does not restate the facts of this case at length herein. Instead, the Court focuses only on those facts most pertinent to its consideration of Lawn Doctor's supplemental motion for sanctions.

On March 14, 2014, the Court entered a Letter Order in which it found that the Rizzos violated the terms of the Consent Injunction entered in this matter on January 25, 2013 and, thus, were in contempt of court. Letter Order of 3/14/2014 at 4; Docket Entry No. 55. Having determined that the Rizzos were in contempt, the Court turned to the appropriate civil contempt sanction. *Id*. After reviewing the parties' arguments and the proofs submitted, the Court determined that requiring the Rizzos to pay $178,000, the established fair market value of Lawn Doctor's customer list, represented the appropriate remedy. In reaching this conclusion, the Court noted:

> [T]he Consent Injunction which was entered in this matter on January 25, 2013, and with the benefit of counsel for the Defendants, clearly prohibited Defendants from either operating Advanced Enviro Care in the restricted territory themselves or acting as a competitive lender to someone buying and intending to operate the company in said area. Defendants not only violated the Consent Injunction when Rizzo entered into the Wilkerson Deal, but then, after being specifically informed by the Court that the Wilkerson Deal violated the Consent Injunction and, after being given the opportunity to remedy the violation before the Court determined what sanction should be entered, Defendants took no actions to try to ameliorate their violation. Nor have the Defendants submitted any evidence that the Wilkerson Deal did not include Plaintiff's customer list. Defendants' actions post the September 13, 2013 motion hearing, *i.e.*, Rizzo's assignment of the promissory note for $275,000 back to Advance Enviro Care, only exacerbated the problem.

*Id*. at 5-6.

The Rizzos appealed the Court's decision to the Court of Appeals for the Third Circuit. While the Third Circuit determined that "[a]mple evidence supports the Court's finding that the Rizzos violated the consent injunction[,]" it remanded the issue of what the appropriate sanction should be, finding that this Court, in awarding $178,156.45 as a civil contempt sanction, "erred in shifting the burden onto the Rizzos to prove that the customer service list had *not* been transferred as part of the Wilkerson Deal." *Lawn Doctor Inc. v. Rizzo*. 646 Fed. Appx. 195, 199, 201 (3d Cir. 2016). Specifically, the Third Circuit determined that it was an abuse of discretion for the sanctions award to be based on the value of a customer list that the Court assumed, "in the *absence* of evidence to the contrary, had been transferred to a third party." *Id*. at 201. As such, the Third Circuit vacated the sanctions award of $178,156.45, and remanded the issue "for consideration of compensatory damages consistent with the evidence in the record." *Id*.

Upon receipt of the Third Circuit's Opinion, the Court directed the parties to submit supplemental briefing on the issue of the appropriate civil contempt sanction. *See* Letter Order entered 5/25/2016; Docket Entry No. 68. After considering the parties' briefing, "the Court determined that the information submitted by Lawn Doctor did not adequately support the lost profits sanction it sought. As a result, the Court denied Lawn Doctor's supplemental motion for sanctions without prejudice and gave Lawn Doctor an opportunity to submit additional evidence in support of its request for contempt sanctions." Mem. Op. entered on 10/25/2017 at 9; Docket Entry No. 86 (citing Order of 1/31/2017 at 1-2; Docket Entry No. 78). In response, Lawn Doctor filed the instant supplemental motion for sanctions.

As noted above, On October 25, 2017, the Court administratively terminated Lawn Doctor's supplemental motion for sanctions in order to permit limited additional discovery regarding "the Rizzos' violation of the Consent Injunction and the appropriate sanction to be

3

imposed in light of same." *Id*. at 18. In this regard, the Court permitted discovery from (1) Advanced Enviro Care, regarding its customer and financial records between January 2013 and July 2014; (2) Daniel Wilkerson, regarding the Wilkerson Deal and what was transferred to him in return for the $275,000 promissory note; and (3) Ken Chapman, Esq., regarding the Wilkerson Deal. *See Id*. at 18. The Court denied the Rizzos' request for additional discovery, finding the scope of same, *i.e.*, "'documents and testimony regarding Lawn Doctor's alleged irrigation services, services they surrendered to third parties, records of winterizing systems and service contracts within the zone that AEC provided similar services[,]'" to be irrelevant. *Id*. at 18-19 (quoting Rizzos Op. Br. at 10; Docket Entry No. 85).

Lawn Doctor subpoenaed the three witnesses identified above. Messrs. Wilkerson and Chapman acknowledged receipt of the subpoenas, as did Mr. Rizzo on behalf of Advanced Enviro Care. Lawn Doctor deposed Messrs. Chapman and Rizzo on December 1, 2017. While Mr. Wilkerson was also set to be deposed, he "did not appear for deposition, citing a change in location as making it impossible for him to comply with the subpoena." (Letter from Ronald A. Giller to Hon. Tonianne J. Bongiovanni of 12/21/2017 at 2; Docket Entry No. 88).

Neither party requested additional discovery at the conclusion of the aforementioned depositions; nor were any discovery issues raised. On December 21, 2017, Lawn Doctor submitted a letter brief, outlining additional evidence it obtained from Mr. Rizzo's deposition that it believed further supported the conclusion that the customer list was an asset exchanged in the Wilkerson Deal. No additional briefing was submitted. The Court now considers the appropriate civil contempt sanction to be imposed against the Rizzos.

**II.     Analysis**

As the Third Circuit explained, "[t]he burden in a civil contempt proceeding is on the petitioning party. *Lawn Doctor, Inc. v. Rizzo*, 646 Fed. Appx. 195, 201 (3d Cir. 2016) (citing *Howard Johnson, Co. v. Khimari*, 892 F.2d 1512, 1516 (11th Cir. 1990)). "Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" *Robin Woods*, 28 F.3d at 400 (citing *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3d Cir. 1984)). The purpose of a compensatory award is "to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Id*. (citation omitted). The Court has "wide, but not unlimited, discretion in fashioning appropriate compensatory sanctions." *Id*. at 401.

Here, the only question for the Court's consideration is the value of the contempt sanctions to which Lawn Doctor is entitled. This Court already determined, and the Third Circuit has already affirmed, that the Rizzos violated the Consent Injunction and that the Rizzos are "foreclosed from arguing that they did not violate the consent injunction because AEC solely provided irrigation services, which the Rizzos maintain were not party of the non-compete covenant." *See Lawn Doctor*, 646 Fed. Appx. at 200 (holding that "ample evidence supports the Court's finding that the Rizzos violated the consent injunction" and that the Rizzos "waived any objection" to the Consent Injunction which "was revised to explicitly include irrigation services within the definition of 'Competitive Business'" because they did not appeal from the declaratory judgment). Similarly, this Court already determined, and the Third Circuit already affirmed, the Court's award of attorneys' fees and costs to Lawn Doctor. *Id*. at 201 (holding that "we are persuaded that the Rizzos willfully disregarded the injunction and that the Court's decision to award attorneys' fees

as compensation for their contempt was not an abuse of discretion" and noting that "because the Rizzos failed to file a second or amended notice of appeal, we lack jurisdiction to consider the *amount* of attorneys' fees awarded.") *Id*. The only issue remanded for further proceedings was the Court's consideration of the value of the sanctions to be imposed. *Id*. The Court addresses that issue herein.

The Court finds that Lawn Doctor has put forth sufficient evidence to establish that the Rizzos sold Lawn Doctor's customer list to Mr. Wilkerson as part of the Wilkerson Deal. In reaching this conclusion, the Court notes that Mr. Wilkerson agreed to spend $275,000 to obtain Advanced Enviro Care from the Rizzos, yet the only alleged asset that was transferred as part of this deal was the transfer of vehicles, which themselves were leased. (Lawn Doctor Br. of 6/24/2016 at 5; Docket Entry No. 73). This begs the question, what else did Mr. Wilkerson obtain as part of the Wilkerson Deal. The Court is persuaded by the proofs proffered by Lawn Doctor that Lawn Doctor's customer list was a component of the sale. In this regard, the Court finds the following testimony J. Rizzo provided in his deposition on behalf of Advanced Enviro Care, wherein J. Rizzo explicitly stated that customers were transferred as part of the Wilkerson Deal, to be sufficient evidence that Lawn Doctor's customer list was part of the sale:

> Q. The 275,000 sale price, what was Mr. Wilkerson buying for that, everything?
>
> A. Whatever customers I had and – yeah.

(Rizzo Transcript at 31:22-24; Ex. A to Letter from Ronald Giller to Hon. Tonianne J. Bongiovanni of 12/21/2017; Docket Entry No. 88). However, even if alone it were not, the Court finds that the aforementioned testimony in conjunction with the following evidence put forward by Lawn Doctor certainly establishes that Lawn Doctor's customer list was a component of the Wilkerson Deal:

(1) The following statements made by the Rizzos, which demonstrate that they transferred irrigation customers to Advanced Enviro Care:

  (a) The Rizzos' statement in their opposition to Lawn Doctor's first supplemental motion for sanctions that "'[Advanced] provided exclusively irrigation services (a separate service that Lawn Doctor does not provide to its customers) in part of the territory that [the Rizzo's] operated their Lawn Doctor business'" (Lawn Doctor Br. of 3/3/2017 at 6; Docket Entry No. 80 (quoting Rizzos Op. Br. of 7/14/2016 at 3; Docket Entry No. 75));

  (b) J. Rizzo's testimony stating, "**I only had irrigation customers you know.** It was only a handful of customers that I owned at the time and that I just did on, like , a maintenance basis . . . Whatever you do from there has nothing to do with me . . . So as far as selling customers, the customers that I had weren't Lawn Doctor's customers. Some were, but went to another company, but then came back. . . . (*Id.* (quoting Rizzos Op. Br. of 7/14/2016 at 3 (emphasis added)));

  (c) The Rizzos' statement in their opposition to Lawn Doctor's first supplemental motion for sanctions that "'there is no evidence of actual service between Wilkerson and any alleged Lawn Doctor's customers for the same service.'" (*Id.* (quoting Rizzos Op. Br. of 7/14/2016 at 10));

  (d) The Rizzos' statement in their opposition to Lawn Doctor's first supplemental motion for sanctions that "'Lawn Doctor and the ***buyer of Rizzo's irrigation company*** provided separate and distinct services, so any alleged damages or calculation as to the value of the list is frivolous.'" (*Id.* at 7 (quoting Rizzos Op. Br. of 7/14/2016 at 13 (emphasis added))); and

  (e) The Rizzos' statement in their opposition to lawn Doctor's first supplemental motion for sanctions that "'[Advanced] provided solely irrigation services. Lawn Doctor did not provide such services to its customers. Even if there was an exchange of list, **the names were for two separate and distinct purposes** . . . (*Id.* (quoting Rizzos Op. Br. of 7/14/2016 at 21 (emphasis added)));

(2) J. Rizzo's continued involvement with Advanced Enviro Care in the restricted territory during the 18 month time period outlined in the restrictive covenant as evidenced by:

  (a) The license plate reading "ADVANC3D" on the car registered to J. Rizzo; (*Id.* at 10 (citing Warner Cert. of 8/20/2013, ¶ 20 and Ex. F; Docket Entry No. 38-9));

(b) The fact that J. Rizzo remained on site at the Lena Road address, which was where his offices had been as a Lawn Doctor franchisee (*Id.* at 10 (citing Warner Cert. of 8/20/2013, ¶ 4));

(c) The text message between Vivian Quuinones, a Lawn Doctor customer, and James Duffy, the principal of Lawn Doctor's new franchisee in the relevant territory, J&D Duffy Enterprises, LLC, in which Ms. Quinones wrote Mr. Duffy, "'Jim, **joe called me today that he is <u>not</u> out of business** and that I paid for coralbean [one of the properties] until November 2014. He wants me to ask you for my money back, since you lie and he dies [sic] still in business.'" (*Id.* at 11 (quoting Frith Cert. of 3/7/2014, ¶ 12 and Ex. B (emphasis added); Docket Entry No. 77-6));

(d) The statement Julia Greco, a Lawn Doctor customer, made to Mr. Duffy that "she was returning to her 'old supplier'" (*Id.* at 12 (quoting Frith Cert. of 3/7/2014, ¶ 18)); and

(e) The representation Dick Shalkop, a Lawn Doctor customer, made to Mr. Duffy that he no longer needed Lawn Doctor's services because he switched to J. Rizzo's services. (*Id.* (citing Frith Cert. of 3/7/2014, ¶ 21)); and

(3) The following pre-pay order forms and invoice indicating that Advanced Enviro Care contacted Lawn Doctor customers in the restricted territory during the 18 month time period outlined in the restrictive covenant:

(a) Two pre-pay order forms for lawn service that Ms. Quinones received from Advanced Enviro Care (*Id.* at 11 (citing Frith Cert. of 3/7/2014, ¶ 9 and Ex. A)); and

(b) An invoice for weed control Ms. Greco received from Advanced Enviro Care (*Id.* at 11-12 (citing Frith Cert. of 3/7/2014, ¶ 16 and Ex. C)).

The Court finds that the aforementioned evidence sufficiently demonstrates that Lawn Doctor's customer list was transferred to Advanced Enviro Care as part of the Wilkerson Deal either via the transfer of a physical list or through J. Rizzo's continued work on behalf of Advanced Enviro Care in the restricted territory during the 18 month time period outlined in the restrictive covenant.

Further, the Rizzos' arguments to the contrary do not undermine the proof submitted by Lawn Doctor. In this regard, the Court notes that many of the Rizzos' arguments focus on Lawn

8

Doctor's alleged failure to establish that it did irrigation work. However, as the Court stated in its Memorandum Opinion entered on October 25, 2017:

> As explained *ad nauseam* whether and to what extent Lawn Doctor provided irrigation services is immaterial. The Court determined that irrigation services were included in the definition of "Competitive Business." The Rizzos never appealed that decision, and, as the Third Circuit determined, they are foreclosed from challenging the inclusion of irrigation services in the definition of "Competitive Business" now.

Mem. Op. of 10/25/2017 at 9 (citing *Lawn Doctor*, 646 Fed. Appx.at 199-200). Moreover, in some of their arguments, the Rizzos in fact suggest, even if they do not fully concede, that a customer list was exchanged as part of the Wilkerson Deal. For example, the Rizzos argue that there is a lack of evidence "of actual service between Wilkerson and any alleged Lawn Doctor's customers for the same service[,]" indicating that Wilkerson was servicing Lawn Doctor's customers (Rizzo Opp. Br. at 9). Additionally, and even more telling, is their argument that:

> AEC provided solely irrigation services. Lawn Doctor did not provide such services to its customers. Even if there was an exchange of list, the names were for two separate and distinct purposes, names and addresses that could be obtained in a phone book or the internet.

(*Id*. at 22). In addition, the Rizzos' attempts to discredit Lawn Doctor's evidence regarding Advanced Enviro Care's contact with former Lawn Doctor customers is likewise unpersuasive. It is clear from the evidence Lawn Doctor submitted that Advanced Enviro Care contacted former Lawn Doctor customers during the 18 month time period outlined in the restrictive covenant.

As stated above, the Court finds that Lawn Doctor has established that its customer list was transferred as an asset in the Wilkerson Deal. Under these circumstances, the Court finds it appropriate to impose the fair market value of that customer list on the Rizzos as a civil contempt sanction. As the Court stated in its Memorandum Opinion of October 25, 2017, "years ago the

9

Court determined that Lawn Doctor established that the fair market value of its customer list was $178,000.  The Court does not intend to reconsider that determination." Mem. Op. of 10/25/2017 at 19.  As a result, the Rizzos are directed to pay Lawn Doctor the sum of $178,000 as a civil contempt sanction.  Further, this payment is to be made within 60 days of the date of the entry of this Memorandum Opinion and the accompanying Order, or, if an appeal is filed, within 60 days of this Court's decision being affirmed.

### III. Conclusion

For the reasons stated above, Lawn Doctor's supplemental motion for sanctions is GRANTED.  Sanctions in the amount of $178,000 are awarded against the Rizzos.  An appropriate Order follows.

Dated:  March 21, 2019

s/ Tonianne J. Bongiovanni  
**HONORABLE TONIANNE J. BONGIOVANNI**  
**UNITED STATES MAGISTRATE JUDGE**